CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

LAURA A. DICKSON.

1. PLEADING AND EVIDENCE—*in respect to question of negligence.* In a suit for a personal injury received by frightening a team and causing it to run away, by the sounding of a whistle on a locomotive, under an allegation that while the defendant's train was approaching from the rear of the team its servants caused the whistle to be sounded in a loud, shrill, unnecessary and *negligent* manner, "needlessly, wantonly, *negligently* and maliciously," whereby the team was frightened, etc., it was *held* competent for the plaintiff to show a case of negligence on the part of the defendant, and for the latter, in defense, to show plaintiff's negligence in putting himself in a place of danger, and in such case, unless the negligence of the defendant was gross and that of plaintiff slight, in comparison, no recovery could be had.

2. But when the declaration charged, that as the train was approaching in the rear, the servants of the defendant caused the whistle to be sounded in sharp, shrill, loud sounds, and in quick and rapid succession, "needlessly and recklessly, *wilfully, wantonly and maliciously*," whereby, etc., it was *held*, that no recovery could be had upon proof of mere negligence on the part of the defendant, but that to authorize a recovery it must be proved that the sounding of the whistle in the manner charged was done needlessly, and either wantonly, recklessly, wilfully or maliciously.

3. NEGLIGENCE—*when contributory negligence does not arise.* If the whistle of a locomotive on an approaching train is needlessly sounded, and done so wantonly, recklessly, wilfully or maliciously, in such a manner as to frighten a team of horses being driven in a narrow lane near by, and cause them to run away and injure the plaintiff, it is no defense to a suit for damages to show that the plaintiff was guilty of negligence in entering the lane. Such negligence will not excuse the wanton, wilful or malicious act causing the injury.

4. SAME—*when sounding of whistle is reckless, wilful, etc.* If the alarm whistle of a locomotive is needlessly sounded in the rear of a team while traveling in a narrow lane near the railroad track, and is continued while the horses are running away with the plaintiff and his conveyance, the engineer having full knowledge that they are running away, and until the train comes abreast of the team, whereby the conveyance is overturned and the plaintiff injured, such sounding of the whistle is wanton, wilful and reckless, if not malicious.

5. LAW AND FACT. Whether a given state of circumstances shows malice or wilfulness, is always a question of fact and never a question of law.

6. Instruction. An instruction is properly refused where there is no evidence tending to prove the hypothetical state of facts to which it relates, and there is no error in a modification of an instruction not changing its sense.

7. Evidence—*affirmative and negative testimony.* It is not the law that negative testimony is of the same force as affirmative.

8. Practice in Supreme Court—*costs on remittitur.* Where a judgment was affirmed after a *remittitur* of a considerable portion of the damages recovered, each party was required to pay his own costs in this court.

Appeal from the Circuit Court of Fulton county; the Hon. Lyman Lacey, Judge, presiding.

Messrs. Judd & Whitehouse, for the appellant.

Messrs. Shope & Gray, for the appellee.

Mr. Justice Dickey delivered the opinion of the Court:

This is an action, brought by Laura A. Dickson (wife of Uriah W. Dickson), to recover damages for injuries sustained by her from being thrown from a buggy in the village of Prairie City, on the 12th of August, 1870.

Certain facts of the transaction are not seriously disputed, if at all. The railroad of appellant passes through this village on a line bearing some $22\frac{1}{2}$ degrees east of north. The streets of the village, with the exception of a narrow lane mentioned hereafter, are laid out, so far as shown in this case, at right angles, and run east and west and north and south. Centre street runs north and south, and intersects the track of the railroad at an acute angle, at a point south of and about 180 rods from the depot or railway station in that village. At this point, and a few rods east of the railroad, a small street or public highway branches to the right from Centre street, and runs along the east side of the railroad, and parallel to it, through a lane about forty feet wide, and within three rods of the railroad track. This lane was opened by the town authorities, and at that time was traveled every day. This road is about 43 rods long, and communicates with and terminates in the west end of Louisa street, which begins three rods from

the railroad track, and at the north end of this narrow lane, and runs then eastward.

On the 12th of August, 1870, Uriah W. Dickson and his wife (the appellee) were traveling in an open buggy, drawn by two horses, driven by Mr. Dickson. They came from the south, on Centre street, to a point very near the intersection of that street by the railway, and there turned to the right, entering this narrow lane, intending to pass through it and thence east on Louisa street, without crossing the railroad. When they entered this lane, a passenger train of appellant was approaching the village from the south. This train had not then reached the crossing at that point, but was some 20 to 50 rods to the rear of the team. Soon after the team entered the lane, and before it was half way through the lane, the horses took fright, became unmanageable, ran away, and as they made the turn to the right into Louisa street, at the north end of the lane, the buggy was capsized, and Mr. and Mrs. Dickson were both thrown violently to the ground. They were both seriously injured, but the injuries of Mrs. Dickson were much the most serious. As the team ran, the train continued its course, and at the time of the disaster was very nearly, if not exactly, opposite the place of injury.

As to the circumstances thus far stated, the proof is clear and without contradiction, and about these facts there seems to be no dispute. Mr. Dickson, who drove the team, testifies that he had no knowledge or suspicion that a train was near until after he had turned to the right into the lane. He also testifies that his team was gentle, and had been accustomed to be driven close to passing trains and locomotives, and had shown no signs of fright under such circumstances.

There is nothing in the evidence tending to contradict these statements. Uncontradicted evidence shows, also, that the whistling post, at which the whistle was usually sounded as a signal for the approach to that station of a train from the south, stands at a point on the railroad 25 rods southward from the crossing at the south end of the narrow lane, 68 rods

28—88 ILL.

south of the place where the buggy was overturned, and 205 rods south of the station, and that the only street crossings on the road between the whistling post and the station were the crossing of Centre street (at the south end of the lane), and two other crossings, one about twenty rods north of the place where the buggy capsized, and another about twenty rods farther north.

The proof also shows, without contradiction, that on the day of the disaster there was nothing on the track calling for the sounding of an alarm whistle. The testimony of Mr. Dickson, who drove the team, and that of the engineer who managed the engine, concur substantially in showing that the ordinary station whistle was sounded a little before the train reached the whistling post, and that at about that time the team entered the lane; that the team started to run away at a point from 10 to 17 rods from the south end of the lane. The engineer testifies, that when he first saw the team the horses were running away, and were then from one-quarter to one-third through the lane, and that the train was then between the whistling post and the south end of the lane, and that when the buggy turned over the train was just passing the team. Mr. Dickson testifies, he first saw the train just after he entered the lane, and at that time it was south of the whistling post; that the horses began to jump a few rods farther on, and at within five rods of the middle of the lane they began to run away, and when the buggy was thrown over at the north end of the lane the train passed on the railroad track. About all these facts there is no material conflict in the testimony. The gist of this controversy rests elsewhere.

In the first count of plaintiff's declaration, the specific wrong charged as the cause of the injury to plaintiff is contained in the allegation, that while the train was approaching from the rear, defendant's servants caused the whistle to be sounded in a loud, shrill, unnecessary and *negligent* manner, "needlessly, *wantonly, negligently and maliciously,*" whereby, etc. In the second count the specific wrong charged as the cause of the

injury is contained in the allegation, that as the train was approaching from the rear, the servants of defendant caused the whistle to be sounded in sharp, shrill, loud sounds, and in quick and rapid succession, "needlessly and recklessly, *wilfully, wantonly and maliciously,*" whereby, etc.

Under the first count, it was competent for the plaintiff, upon appropriate proof, to have made out a case of *negligence* on the part of defendant. In answer to *such a case,* so made, it would have been competent for defendant to have shown, as a defense, that plaintiff had been guilty of negligence in putting herself in a place of danger, and unless the negligence of appellant was gross and that of appellee was slight in comparison to that of defendant, no recovery could have been had. But plaintiff did not attempt to make such a case by proof.

Under the second count, the plaintiff could not recover upon proof of mere negligence on the part of defendant. No recovery could be had under that count, without proof that the sounding of the whistle in the manner charged was done needlessly, and either wantonly, recklessly, wilfully or maliciously. The case plaintiff attempted to make by proof, was under this count.

To a case thus made it is no defense to say that the plaintiff was guilty of even great negligence in entering the lane in question when the train was about to pass. No matter how great may have been the negligence or imprudence of the previous act of entering the lane, it could not excuse the servants of defendant, if, after the lane was entered, and there was no way of escape, the servants of the defendant, knowing the situation, sounded the whistle in alarming sounds, and did so needlessly and recklessly, wantonly, wilfully or maliciously. If it be true that the alarm whistle was needlessly sounded in the rear of the team while it was traveling northward in this narrow lane, and was continued while the horses were running away (the engineer having full knowledge that they were running away), and until the train came abreast of the running team, it requires no argument to show that such sounding of

the whistle must, of necessity, have been wanton, wilful and reckless, if not malicious.

The gist of the controversy is, therefore, brought to rest upon the determination of that part of the allegation in plaintiff's declaration which charges, that "after the sounding of the usual station whistle at or near the whistling post, the servants of defendant caused the whistle to be sounded in sharp, shrill, loud sounds, and in quick and rapid succession of sounds, while said train and locomotive was so approaching and passing the plaintiff." In other words, if the proof shows that the "alarm whistle," as it is called, was sounded at, and continued from a short distance south of, the end of the lane to the place of the accident, there is no defense to this action.

On this question the proofs are very voluminous and very contradictory, and, to say the least, do not greatly preponderate in favor of appellant. In fact, it seems to us to preponderate in favor of the version of the appellee. In any event, it was the duty of the jury to weigh this evidence, and determine where the truth really was. The finding on that question can not be disturbed on that ground, for evidence does support the verdict, and we can not say, from an examination of all the proofs, that the finding was wrong.

It is insisted by appellant, that the court erred in its rulings in admitting improper testimony and in excluding proper testimony, and many specifications are made. A careful examination shows that most of the rulings complained of relate to testimony about matters which, in this trial, were wholly immaterial.

As already suggested, upon the undisputed facts in the case, the only material issue for the jury to determine was whether extraordinary whistling occurred after the running team was seen by the engineer. The rulings complained of, other than those relating to the alleged want of care in entering the lane at a time when a train was approaching, are not subject to just exception.

As to the rulings bearing upon the question of supposed

negligence of appellee in entering the lane when a train was approaching, it must be observed that every instruction given at the request of plaintiff which directs a finding for plaintiff (except the third), is based upon the hypothesis that the jury believe, from the evidence, that the sounding of the whistle which caused the disaster was wilful—wanton; and the third rests upon the hypothesis of gross negligence by defendant and ordinary care by plaintiff. In view of all the evidence, exceptions to these instructions are not well taken and can not be sustained.

In the fourth instruction the rule as to contributory negligence is not well stated, but (as was said in *Chicago, Burlington and Quincy R. R. Co.* v. *Dickson,* 63 Ill. 154,) "a careful examination of the evidence in the record fails to show that appellee was guilty of any negligence." It certainly fails to show any negligence which could operate as a defense, on the hypothesis stated in that instruction, which was, that "the jury believe, from the evidence, that * * * the whistle of said locomotive was *needlessly* and *wilfully* sounded, and the horses * * * were thereby frightened and caused to run away, and so injured the plaintiff."

The eleventh instruction relates solely to the measure of damages, and no error is perceived in the rule prescribed. Fault is found with this instruction in this, that nothing is said about contributive negligence. We have shown that, as to the case plaintiff attempted to make, the question of contributive negligence did not arise upon the proofs.

As to the modification of the third instruction asked by the defendant, it is insisted that the court submitted to the jury, as a matter of *fact,* that which should have been declared as a matter of law. This position is not sound. Whether a given state of circumstances shows malice or wilfulness, is always a question of *fact* and never a question of *law*. This remark justifies also the refusal of defendant's eighth, ninth, tenth and seventeenth instructions.

The tenth instruction was properly refused, upon the ground

that there is nothing in the proofs tending to show the hypothesis that the engineer did not see the team at the time of the acts complained of.

The modification of the seventh instruction, asked by defendant, in no way changed the sense of the instruction, as originally submitted.

The modification of the sixteenth instruction was necessary and proper. The twentieth was properly refused, because the law on the subject was correctly given in the nineteenth. The twenty-first instruction was properly refused.

It is not the law that negative testimony is of the same force as affirmative testimony. Upon the whole, we think the law of the case as to all material questions before the jury was fairly given, and with substantial accuracy. In so far as the instructions depart from critical accuracy, the departure is in favor of the defendant.

The amount of the judgment is complained of—that the damages are excessive. Since the appeal in this case was taken, appellee has entered a *remittitur* of $2500. The judgment must be affirmed for $4000, being the amount left after deducting the $2500 remitted. Each party must pay their own costs in this court.

<div align="right">

*Judgment affirmed in part.*