## Chicago City Railway Company v. Lizzie W. Hyndshaw.

### Gen. No. 11,526.

1. APPELLATE COURT—*what beyond province of, in reviewing verdicts.* It is not proper for the Appellate Court, in the first instance, to pass upon the credibility of witnesses nor nicely to determine where the weight of the evidence, taken as a whole, lies.

2. SPEED OF CAR—*how proof of, may be made.* Proof of the speed at which a street car was traveling may be made by taking the opinions of those witnesses who saw it in motion at the time in question.

3. MOTION TO STRIKE OUT—*when, essential to urge incompetency of evidence.* When evidence has been received under a promise that a link

necessary to its competency will be established by other evidence and a motion to strike out such evidence is made and overruled because of such promise. such a motion must be renewed if such promise is not kept in order to urge upon appeal the incompetency of the evidence so received.

4. INCOMPETENT EVIDENCE—*how admission of, cured.* The admission of incompetent evidence may sometimes be cured by an instruction to the jury to disregard the same.

5. INSTRUCTIONS—*presumption as to obedience to.* It must be presumed by the court that the jury obeyed the instructions given.

6. INSTRUCTIONS—*how to be considered.* Given instructions constitute one connected body and series, and are to be thus read and considered by the jury.

7. INSTRUCTION—*when, pertaining to care of conductor and motorman, improper.* An instruction is bad which asserts that the conductor and motorman had a right to assume that others, including plaintiff, would act with ordinary and reasonable prudence for their own safety.

8. JUDGMENT—*when, not excessive.* A judgment for $900 is not excessive where it appears that the plaintiff was seriously injured, in that three of her ribs were fractured, her body and one arm bruised and blackened, and where it likewise appeared that she was confined to her bed for a period of two weeks and that her health since the accident has been impaired.

9. REMITTITUR—*when, does not vitiate verdict.* Where the plaintiff made a case tending to show a right of recovery and the trial was free from substantial errors, the fact that the trial judge cut the verdict down to what he believed to be a reasonable compensation for the injuries suffered, does not vitiate the verdict and constitute reversible error.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 10, 1904. Rehearing denied October 24, 1904.

**Statement by the Court.** This is an action on the case brought by appellee against appellant for injuries sustained May 3, 1901. Appellant owns and operates a double track street railway in and along State street, which is a north and south public highway in the city of Chicago. The north-bound cars run over the east track, and the south-bound cars over the west track. Adams street runs east and west and crosses State street in the heart of the city. May 3, 1901, appellee, then aged sixty-one years, accompanied by her sister, a woman forty-six years old, was crossing State street from the east to the west on the south

Chicago City Ry. Co. v. Hyndshaw.

cross-walk of Adams street. .When they crossed the east track a train, consisting of a grip-car and two closed cars, was coming slowly, from two to six miles per hour, north on that track, and, as the preponderance of the evidence tends to show, distant ten feet or a little more from them. As the two women were passing further to the west, a wagon, the horse trotting, came from the north along and in the west track. Seeing this they stepped back upon and stood in the space between the two tracks. This space is about three and a half feet in width, measuring from the inner rail of one track to the inner rail of the other track. The grip-man in control of the train says: "When they stepped back the end of the grip was about even with them. I kept moving along with the train, and the horse coming south kept coming, and they stood there." The evidence tends to show that at the moment they were hemmed in between the grip-car and the body of the wagon, the driver of the wagon pulled out to the west, thus throwing the rear end of the wagon box in toward the car, and appellee was then either struck by the end gate of the wagon, or by the car, or, becoming wholly confused by the situation and its dangers, fell down and against the car. An alarm was given and the train was stopped within a few feet. An examination of the person of appellee showed that her visible injuries consisted of three ribs partially fractured, contusions under the right breast, under the right shoulder blade, and on the right arm from the elbow to the shoulder. She was confined to her bed twelve or thirteen days, and "never has been entirely well since." At the time of the trial appellee was in a hospital and unable to come to the court room. The cause was heard without her evidence. The trial resulted in a verdict finding appellant guilty and assessing appellee's damages at the sum of $1,875. On the motion for a new trial the court ruled that unless appellee would remit from the verdict the sum of $975, he would grant the motion. Thereupon appellee remitted that amount, and a judgment was entered for the sum of $900, and appellant perfected this appeal.

WILLIAM J. HYNES and JOHN E. KEHOE, for appellant; MASON B. STARRING, of counsel.

UTT BROS., for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The first point made by appellant is, that the verdict is not justified by the evidence, and that therefore the trial court should have directed a verdict for appellant.

Whether or not appellee was in the exercise of ordinary care for her personal safety just before and at the time of the accident, and whether or not appellant was then negligent, were questions of fact, the determination of which was left to the jury. Their verdict shows that they found each of these questions in favor of appellee. An examination of the record convinces us that there is evidence to support the verdict, and that such verdict is not against the manifest weight of the evidence. It is not for us, in the first instance, to pass upon the credibility of the witnesses, nor nicely to determine where the weight of the evidence taken as a whole lies. Fair-minded men of ordinary intelligence might reasonably differ as to the conclusions to be drawn from the evidence. In this condition of the record we cannot hold that the learned trial judge erred in refusing to take the case from the jury. To do so would be a practical denial of the fundamental right of appellee to have the facts of her case tried and determined by a jury. Wabash v. Brown, 152 Ill. 484.

The second contention of appellant is that the court erred in admitting improper evidence offered in behalf of appellee. The witness Christianson was asked as to the speed of the car at the time of the accident. Counsel interposed an objection, which was overruled, and an exception taken. He answered: "About five or six miles an hour." A motion was then made to strike out the answer. The court said: "Let his answer stand." To this ruling an exception was entered. The point is not well taken. There is no better way to get the speed of a train at a particular time than to take the judgment of those witnesses who then saw it in

motion.    While in one sense it is opinion evidence, in another it is evidence of a fact, and from necessity the courts permit laymen to testify thereto.    C., B. & Q. Ry. Co. v. Johnson, 103 Ill. 525; Chicago City Ry. Co. v. Bundy, 210 Ill. 45;  Lawson on Expert and Opinion Ev., p. 460, and cases cited.

The sister of appellee, called in her behalf, was asked what was the condition of appellee's health between the time of the accident and the time of the trial.    Upon objection, her counsel said:    " I will show her condition from the day they were on the street there until today."    To which the court replied, " Very well," and the examination proceeded.    Later counsel for appellee said :    " For the present I think that is all.    After the doctors have been on the stand, I may ask her a few more questions."    The Court:    " Why cannot you finish with her now ? "    Mr. Utt:    " You say that I must make the connecting link."   The Court:    " If you say that you will make the connecting link, that is good enough for me."    Mr. Utt :    " I will make it, Your Honor, or our case will drop, one of the two."    The Court :    " Go right along."    The witness then testified as to the physical condition of appellee for the week preceding the trial.    Counsel for appellant then moved to strike out the evidence for want of connection between the accident and the then condition of appellee.    The court said :    " He has promised to show it."    To this ruling of the court appellant excepted.

It is stated by counsel for appellant that thereafter no connection was made between the condition of appellee in the hospital and the accident in question, or between the accident and the " something growing on her neck," for which she was in the hospital undergoing an operation; and that by taking counsel's word that he would make this connection, he was enabled to put in incompetent evidence which appealed to the sympathy of the jury.    Counsel for appellee did attempt to make that connection.    He called Dr. Schouler, who for many years had been appellee's physician, who treated her at the time of the accident, and

had been consulted by her from time to time from then until she went into the hospital, a short time before the trial. When asked to state her condition from the date of the injury, he replied : " Well, since the time I had her under treatment on the 16th of May, she has occasionally consulted me as to her condition. She is very nervous and run down, and the last few weeks when she consulted me was in regard to the growth upon her neck, which we operated upon." Counsel for appellee asked six questions in an endeavor to show that her then condition was due to the injury, but, upon objection being interposed, each of these questions was held to be improper. The result of the examination was that while the doctor testified generally to the condition of appellee up to the time of the trial, he did not give the accident as the cause of the tumor—he did not testify at all upon that point. Evidently the learned trial judge did not think that counsel, although he had called the attending physician, had sufficiently made the connection, for in charging the jury, the court, among other instructions, gave them the following :

" The jury are instructed that there is no evidence in the case to warrant the jury in finding that the disease or affliction on account of which the plaintiff went or was sent to the hospital within the past two weeks is due to the accident in question, or has any connection whatever with the accident in question, and the jury cannot allow the plaintiff any damages on account thereof."

This instruction, so far as it is possible to do so by an instruction, took the incompetent evidence from the consideration of the jury.

When the motion was made to strike out this evidence it was clearly within the discretion of the court, upon the promise of counsel for appellee, to make the connection, to admit the evidence subject to that promise. If counsel for appellant, at the close of appellee's case, believed that such connection had not been made, it was then their duty, if they desired the exclusion of that evidence, to renew the motion to strike it out. Not having done so, appellant will

not now be heard to urge that in its admission and retention the trial court committed reversible error.

Dr. Letourneau, who saw her only once, testified that he examined appellee about three months after the accident, and found she had a floating kidney. But the attending physician swore that he never found a floating kidney, or any evidence of injury to or disease of the kidneys. There was no direct evidence connecting this floating kidney with the accident. The court instructed the jury " that there is no evidence in this case to warrant the jury in finding that a floating kidney, if you believe from the evidence plaintiff at any time had a floating kidney, was due to the accident in question." We must presume that the jury obeyed this instruction.

The instructions are not numbered. Appellant complains that the instruction given at the request of appellee concerning damages, which is found upon page 66 of the abstract, does not limit the recovery to such injuries as are the direct and proximate result of the accident complained of in the declaration. If this complaint be well founded, a thing we need not affirm nor deny, the defect is cured by instructions found on pages 68 to 71 of the abstract, inclusive. It is not necessary to cite authorities to sustain the proposition that the given instructions constitute one connected body and series, and are to be thus read and considered by the jury.

The instruction tendered by appellant (found on page 72 of the record) and refused by the court, was properly refused. It tended to mislead the jury into the belief that appellee did not exercise ordinary care for her personal safety at the time of the accident. It also asserts that the conductor and motorman had a right to assume that others, including appellee, would act with ordinary and reasonable prudence for their own safety. It was improper for the court to say, as matter of law, that the conductor and motorman might assume anything. Ill. Cent. Ry. Co. v. Slater, 139 Ill. 199; C. & A. Ry. Co. v. Sanders, 154 Ill. 537.

The amount of the verdict does not seem to us to be

excessive.   Appellee was seriously injured.   Three of her ribs were fractured, her body and one arm were bruised and blackened, she was in bed over two weeks, and the evidence tends to show that her health since the accident is not so good as it was prior to that date.   The mere fact that the trial court required a remittitur of substantially half the amount of the verdict before he would enter judgment thereon, does not necessarily imply that the jury in rendering such verdict were swayed by passion, prejudice, misconception or sympathy.   A careful review of the evidence fails to convince us that anything vicious or improper entered into the making up of this verdict.   In many cases in the Supreme Court and in this court where the plaintiff made a case tending to show a right of recovery, and the trial was free from substantial error, the fact that the trial judge cut the verdict down to what he believed to be a reasonable compensation for the injuries suffered, does not create reversible error.   Ill. Cent. Ry. Co. v. Ebert, 74 Ill. 399; C., B. & Q. Ry. Co. v. Dickson, 88 Ill. 431; B. & O. S. W. Ry. Co. v. Then, 159 Ill. 535; L. S. & M. S. Ry. Co. v. Hundt, 41 Ill. App. 220; Goldie v. Werner, 50 Ill. App. 297; Chicago A. P. B. Co. v. Rembarz, 51 Ill. App. 544; W. Chicago St. Ry. Co. v. Ranstead, 70 Ill. App. 111; Siegel, Cooper & Co. v. Connor, 70 Ill. App. 116; N. Chicago City Ry. Co. v. Anderson, 70 Ill. App. 336; McNulta v. Hendele, 92 Ill. App. 273; S. Chicago City Ry. Co. v. McDonald, 94 Ill. App. 612.

Finding no substantial error in this record, we affirm the judgment of the Superior Court.

*Affirmed.*