McGeehan *v.* Lehigh Valley R. R. Co., Appellant.

[Marked to be reported.]

*Contributory negligence—Railroad station—Passenger placing himself in a dangerous position.*

A passenger at a railroad station, who in anticipation of the approach of his train stands on the planking between the east and west bound tracks and is injured in consequence of a coal train backing up on one track while

his train is arriving on the other track, is guilty of contributory negligence, there being a safe place beyond the tracks provided by the company at which he could have remained until the actual arrival of his train : Moore v. P. W. & B. R. R. Co., 108 Pa. 349, applied.

Argued April 11, 1892. Appeal, No. 112, Jan. T., 1891, by defendant, from judgment of C. P. Luzerne Co., Sept. T., 1885, No. 9, on verdict for plaintiff, John J. McGeehan. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Trespass for personal injuries.

The case was tried before WOODWARD, J., and the verdict was for the plaintiff in the sum of $3,500.

The facts appear by the opinion of the Supreme Court.

The court below charged in part as follows :

[" You will inquire whether it was ordinarily prudent for the company to have a platform, such as this one between the tracks of their road, being about seven feet wide ; and if, under the circumstances, such a platform, for the purposes described, and of such a width, would make a necessarily dangerous place in its use for its intended purpose.   Then, was it properly guarded and protected by the company so that passengers should have fair notice of danger of the possible approach of trains which might result in two trains passing this platform, the one in the one direction and the other in another, at the same moment.] [1]

\*      \*      \*      \*      \*      \*      \*      \*

" We have said to you a passenger is bound, himself, to be careful.   He is not at liberty to put himself in danger when he may avoid it.   This has been illustrated by instances of passengers getting off cars when in motion, which is contributory negligence, and which prevents a recovery.   There are instances of parties claiming damages for injuries resulting from their putting their arms or their persons in peril unnecessarily— through the windows, perhaps, of the cars ;—in any such case where accident and injury result, and where the plaintiff himself has been guilty of the want of ordinary care, the law permits no recovery in damages.

[" But we say to you further, in this connection, that a passenger is not to blame for not foreseeing events which are uncommon in the business concerned, nor is he to be deemed guilty

of concurring negligence when he takes only such risks as under the same circumstances a prudent man would take. In this connection we call your attention to the fact which has been argued, that for several years this plaintiff and other work-men had boarded the train at this point, had stood upon this platform which was apparently there for the purpose of accommodating people in getting on and off the cars of the company; and these facts, as has been well argued, are to be considered by you in the consideration of the question of the concurring negligence alleged. "] [2]

Defendant's second and fourth points, refused, were as follows:

"II. The defendant having provided a safe place for passengers to wait and the plaintiff having voluntarily left such place of safety and gone to one of known danger, the plaintiff cannot recover." [3]

"IV. Under all the evidence the plaintiff is not entitled to recover." [4]

*Errors assigned*, were (1, 2) portions of the charge as above in brackets, quoting them; (3, 4) the refusal of defendant's second and fourth points, quoting them.

*Henry W. Palmer, J. Vaughan Darling* with him, for appellant.—The planking between the tracks was not a platform; it was not raised *above* the tracks, but was a little below them; and it was only the ordinary planking commonly used by all railroads to facilitate passengers in their way to and exit from the cars.

It cannot be said that the passage of railway trains upon one of the main tracks was "an unforeseen event" to a man who for years had been fully aware of the character and use of the railroad at that point, or that it was one "uncommon in the business concerned."

If it be true that the place was one of known danger, then, like the case of riding in a baggage car or on a cowcatcher, there could be no license to occupy the position: Penn. R. R. v. Langdon, 92 Pa. 21; Beach on Contributory Negligence, 161, § 55.

The plaintiff having voluntarily left a safe place provided for passengers to wait and gone to one of known danger, he cannot

recover. Walking or standing upon a railroad track is negligence per se : Bacon v. Baltimore R. R. Co., 15 Am. & Eng. R. R. 409; Carter v. Columbia R. R. Co., Id. 414; Louisville R. R. v. Yniestra, 29 Am. & Eng. R. R. 297 ; Moore v. P. W. & B. R. R., 108 Pa. 349. Nor can one recover who places himself unnecessarily in a dangerous position when there are other places of safety that he might take: Cunningham v. Chicago R. R. Co., 12 Am. & Eng. R. R. 217.

The true test of contributory negligence is, did the plaintiff's neglect contribute to the injury: L. V. R. R. v. Greiner, 113 Pa. 600. Even in the use of a public railway, a traveler who does not avoid a known danger when he might have done so is guilty of contributory negligence : Pittsburgh S. R. Co. v. Taylor, 104 Pa. 306.

As to negligent use of platform, see Balt. R. R. v. Schwindling, 101 Pa. 258; Penn. R. R. Co. v. Bell, 122 Pa. 58.

This case is to be distinguished from Kohler v. R. R. Co., 135 Pa. 346. There the plaintiff waited at the proper platform until his train arrived at the station.

*E. A. Lynch, John Lynch* and *R. H. Wright* with him, for appellee.—The plaintiff, with others, took his position between the tracks in anticipation of the approach of his train, so as to board it with the least delay. A passenger on a railway is justified in assuming that the company will keep the road free from interruption or obstructions when passenger trains stop at a depot or station to receive and discharge passengers: B. & O. R. R. v. State, 12 Am. & Eng. R. R. 149 ; 2 Wood's Railway Law, 1169.

It is gross negligence for a railroad company to construct its platform for passengers so narrow that a passenger, while standing upon it, may be injured by a passing train. Nothing can be so permanently dangerous as placing a platform for passengers between the two tracks of a railroad: Penn. R. R. Co. v. Henderson, 51 Pa. 331.

The question of defendant's negligence was properly submitted to the jury: Woods R. Law, pp. 1165, 6; McDonald v. Chicago R. R. Co., 26 Iowa, 124; Curtis v. D. & M. R. R. Co., 27 Wis. 158; Haskin v. N. Y. C. & H. R. R. Co., 65 Barb. 129 ; Brassell v. N. Y. C. & H. R. R. Co., 84 N. Y. 241; Wes-

ton v. N. Y. & El. R. R. Co., 73 N. Y. 595; Dobiecki v. Sharp, 88 N. Y. 204; Langan v. St. Louis, etc. R. R. Co., 3 Am. & Eng. R. R. 356.

OPINION BY MR. JUSTICE GREEN, May 9, 1892:

At the place where the accident in this case occurred there were three railroad tracks. One was a switch, and the other two were the main tracks of the defendant's road. It was the lower station at Hazleton, near which were the Hazleton shops, on the north side of the railroad, and on the south side was the office or depot of the defendant. The space between the office and the tracks, between the rails of each track, and between the two tracks, was all planked over, the planking being slightly below the level of the top of the rails.

The witness, John Brislin, a carpenter, examined by the plaintiff, testified that the distance from the corner of the depot to the first rail was 14 feet, that the space between the tracks was 7 feet, and that the length of the planking was 128 feet. The plaintiff testified that he and a number of others, miners, were awaiting the arrival of the miners' train to take them to Stockton, where they worked in the coal mines. This train stopped every morning, shortly after six o'clock, to take on the miners, and the plaintiff was in the habit, regularly, of going to his work every morning by this train, and had been doing so for upwards of two years before the accident. On that morning, he testified that he was standing by the corner of the office, waiting for the miners' train, that a preceding passenger train arrived and left, and, after remaining in his position some minutes, an excursion train arrived, stopped, took up some passengers, and passed on. After this passed, he says, he crossed over the south track and the switch track, and took his position, with a number of miners, between the two main tracks of the road, the north track and the south track.

He was asked: " Q. At what point of time when the miners' train came in? A. About twenty minutes of seven. Q. I mean, was the miners' train coming at the time? A. No; not then, when I took the platform. I stood there and looked westward, and I saw it coming about the gates. Q. How far is that, about? A. About 380 feet. Well, I stood there in order to take the train when she would come along, with a

number of others.   Q. About how many others?   A. Between
45 and 50.   Well, she came along; I kept my eye on her com-
ing until she was a very short distance from me, and I heard
some kind of a noise behind me.   I looked back, and here was
a coal train right behind me.   I looked at the miners' train—
Q. In what direction was the coal train coming?   A. Going
westward, being pushed by an engine.   Q. How long was the
train?   A. Well, I should judge, between 18 and 21 cars.
Q. What were they?   A. They were six-ton cars, all gondolas.
I don't know how much they held, exactly; they were empty
cars.   Q. Going fast or slow?   A. Going at a pretty lively gait,
and I saw the position; I looked to see if I could make across
the railroad; I saw that it would be dangerous to do so, so I
prepared myself that, if a shove would come from any direction,
that I could hold up.   Well, there was a shuffle, it seems,
among the passengers, that they could not stand still—seeing
the predicament the same as I did, I suppose—and each man
looked to himself; all spread out in single file, in order to jump
on the train when she would land or stop; consequently, I
looked around, and by looking around at the moving gondola
behind my back, I was struck on the knee with the step of
the passenger car, and knocked back against the coal train.
Q. What did you say about arranging yourselves at that time?
A. Shuffling to get out of the way; they saw the danger—
shuffling to get out of the way; I did myself—when I seen
that there was danger that I prepared myself.   Q. Danger from
what?   A. From the train backing up and one coming down.
We were between both of them.   I took a firm stand—Q. You
told that.   You were knocked; where did you go?   A. I was
knocked westward, recovered myself, and was struck by an-
other car eastward.   Q. What did you strike?   A. A coal car.
Q. Where did it strike you?   A. Well, about the shoulder;
I was struck until I was knocked the last—I still kept on my
feet until I was struck by the cylinder on this Dexter engine,
pushing the coal train—right here in the kidney, and fell east,
betwixt the tender and Dexter engine, which was pushing the
coal train."

The plaintiff proceeds to describe how he fell, and how his
hand was hurt by a wheel passing over it.   This is the plain-
tiff's own account of the occurrence, and, it is almost needless

to say, it is absolutely fatal to any right of recovery. What makes the matter worse is, that he knew that the coal train was standing on the south track, a short distance below the station.

He was asked: " Q. At the time you crossed over from the front of the office the coal train was standing down. A. Standing down at the water-tank; standing still. It was on the main track." He was asked whether he would have been hurt if he had stayed on the side of the railroad next the office, and answered the question evasively several times. Finally, he was asked: " Q. If you had stayed where you stopped first, you would not have been hurt? A. Anybody stops up there would not get hurt, certainly—away from the road altogether."

The plaintiff's witness, Brislin, testified, that it was 14 feet from the corner of the depot to the first rail, and this is what the plaintiff says is being "away from the road altogether." Another witness for the plaintiff, Daniel Duffy, testified that he was on the side next the office waiting for the same miners' train, and could not cross over the south bound track on account of the coal train. He said: " Q. You were on the side of the track next the office? A. Yes, sir. Q. How many men were standing there with you? A. There was not many there then. Q. About how many? A. Well, there was about—I judge about two or three along with me there while I looked around. Q. Then, after the coal train got by, you went over and got on the miners' train? A. Yes, sir. Q. You did not get hurt? A. No, sir. Q. You were not in any danger of being hurt where you stood? A. No."

The entirely undisputed facts are, that the plaintiff crossed from a place of perfect safety, over the south bound track, which was next the office, and stood between the tracks, before the miners' train arrived, and while he was in that position the coal train backed slowly up, and was passing the station, and had got almost by when the miners' train arrived from the opposite direction and stopped to take up the passengers who were waiting for it. The plaintiff had no occasion whatever to leave the platform immediately in front of the office until the arrival of the train. He knew that train stopped there every morning for the express purpose of taking up these very miners and any other passengers, because that was precisely

what he had seen done every morning for more than two years. He was not asked by any officer of the company, nor by anyone else, to cross over the south bound track before the train arrived. There was not the slightest necessity for his so doing. He was in a place of perfect safety, but a little more than twenty feet from the north bound track on which the miners' train approached. It would have taken but a few seconds to walk that distance. He had no occasion, therefore, to cross that track at all until the miners' train actually arrived at the station. Had he waited till then, there would have been no danger, because when the miners' train arrived the coal train was backing past the station, and had nearly gone by. He could not then have crossed the track on account of the coal train, which was at the moment an obstacle to his passage.

The feeble attempt to excuse his action by calling the planked space between the tracks a platform is utterly futile. It was nothing but the ordinary space between two tracks. There was not a solitary characteristic or mark of any kind to justify its description as a platform. Not a witness in the case testified that it was built or arranged for any such purpose. The same situation is almost universal at all stations on double track railroads. Underground crossings for the use of passengers are most rarely seen. But it is sufficient to say that the plaintiff, of his own mere will, without the slightest necessity or reason for so doing, placed himself between the two tracks in a position of manifest danger, before the arrival of the train he was awaiting, and stood so near an approaching train that he was struck by a passing car. It is a necessary conclusion that he was guilty of contributory negligence in so doing and cannot recover.

Authority is not necessary to support so plain a proposition, but, if it were, this court has explicitly so decided in the case of Moore v. Phila., Wilm. & Balto. R. R. Co., 108 Pa. 349. The present Chief Justice there said : " The plaintiff was standing at a place of known peril ; so clearly so, that we must declare it as a matter of law. He ought not to have stepped upon the track until his passage was clear. It was negligence per se to stand between the tracks while the train passed. There was no necessity for his doing so, and, having done so, it was clearly his duty to be vigilant and look out for an approaching train.

As before said, he had a clear view of the track for half a mile, but unfortunately he was looking at the passing train instead of up the track. This was negligence on his part, and such negligence that, without it he would not have been injured."

It is not necessary to extend the discussion. Upon the plaintiff's own testimony, and upon all the evidence, the defendant's fourth point should have been affirmed and a verdict for the defendant directed.

Judgment reversed.

STERRETT and MITCHELL, JJ., dissent.