THE SOUTHERN BELL TELEPHONE COMPANY *v.* LYNCH.

SIMMONS, C. J.—1. The declaration alleging that the plaintiff became entangled in a coil of telephone wire belonging to the defendant, which it had negligently left lying or hanging in the street, and

v 95-34

that the wire becoming entangled in her clothing she was thrown violently on the pavement and injured, and the evidence showing that one end of the wire was fastened to a pole and the other to a tree, that it was about six or seven inches from the ground, that a parcel of it was tangled up, and that the plaintiff became entangled in it and tripped and fell over it, there was no substantial variance between the *allegata* and the *probata* as to the manner in which the injury was occasioned.

2. Although the declaration did not specifically allege any injuries to the sexual organs of the plaintiff, there was no error in allowing the plaintiff to testify to such injuries, it appearing that her evidence as to the same was admitted solely for the purpose of throwing light on the general nature of her injuries and her pain and suffering, and that the jury was instructed not to consider the same for any other purpose.

3. There was no error in refusing to require the plaintiff, during the trial, to submit to a medical examination at the instance of the defendant, it appearing that she had previously been several times examined by physicians, one of whom was sworn as a witness for the defendant.

4. The newly discovered evidence, being mainly of an impeaching character and not being such as would upon another trial probably produce a finding for the defendants, is not a cause for a new trial.

5. The evidence warranted the verdict, and there was no error in refusing to grant a nonsuit, nor in denying a new trial.

November 26, 1894.                                    *Judgment affirmed.*

Action for damages.    Before Judge WESTMORELAND. City court of Atlanta.    March term, 1894.

Maggie Lynch sued the telephone company for damages claimed to have resulted from being tripped up by a wire and thrown upon the street pavement. She obtained a verdict for $700, and the defendant's motion for a new trial was overruled.

The declaration alleged, that plaintiff resided on Wheat street in the city of Atlanta, and on December 31, 1892, about nine o'clock at night, started to go from her home across that street to a store. She had not gone far when she became entangled in the coil of a wire belonging to the company and by it negligently left lying or hanging in the street; whereby she was thrown violently upon the pavement, where she lay for

some time, unable to rise from the instantaneous pain and suffering caused by the fall. Then she managed to get into her house, a few feet away, where she took her bed and has since been confined thereto. Soon after getting into the house she was seized with convulsions and had one after another from twenty-four to thirty-six hours thereafter, although a physician was called immediately upon her reaching the house. She suffered indescribable agony. She was married and pregnant, and the nervous shock and injury caused by the fall caused her to abort or miscarry. As the direct result of the fall she suffered and still suffers from inflammation of the tissues of the bowels, concussion of the spine, and injury to her back, hips, side and head, and from the swelling of her feet and limbs. She is permanently injured, and will continue to suffer great pain as long as she lives. She had no notice that the wire was down in the street, had never seen it there, and it being dark, did not know it was there until she became entangled in it. She was without fault or negligence. The fact that the wire was down and the danger attending the same were known to the company, or could have been known by the exercise of ordinary and reasonable care and diligence; and it was grossly negligent in not inspecting and looking after the same. Whether or not it was in use by the company at the time, it was placed upon the telephone poles for use by the company, and an inspection could not fail to reveal its dangerous condition. Plaintiff previously worked as a laundress and cook, besides cooking for her own family, and earned from twenty to thirty dollars per month, but in future will be unable to earn anything, and will be a burden to her family. She sues for pain and suffering, lost time, deprivation of capacity to labor, mental anguish, disappointment of maternal hopes, permanent injury and incapacity for happiness and labor, and for exemplary dam-

ages. She originally alleged that she was thirty-seven
years old at the time of the injury. By amendment at
the trial, she alleged that this statement was a direct
error, as her age was twenty-eight years at said time.

The motion for a new trial contains the grounds that
the verdict is contrary to law and evidence, and a ground
of newly discovered evidence. Also, that the court
erred in overruling a motion for nonsuit, on the ground
that plaintiff had failed to prove that defendant was
negligent, and that the proof varied from the allegations
in such manner as to prevent a recovery.

Also, that the court refused to charge, upon oral re-
quest made in argument, that plaintiff could not recover
for any injury to her sexual organs. (The court certified
that there was no written request to charge, and that he
did not remember what oral request was made.)

Also, that the court permitted the plaintiff to testify,
over defendant's objection that it was not covered by
any allegation in the declaration, thus: "I just can't
sleep with him and be with him as a wife should be
with her husband. I can't stand nothing like that."
The jury were instructed that they were not to consider
this testimony for any purpose other than to throw light
on the character of the injury and the pain and suffering

Also, that the court refused to permit defendant to
have plaintiff examined by a physician.

The testimony for the plaintiff at the trial tended to
show, that she and her daughter went from their house
about half past nine o'clock on the night of December
31, 1892, and as they started across Wheat street they
stumbled over a wire one end of which was lying loosely,
somewhat coiled, upon the ground, and the other at-
tached to a pole of the defendant. It was dark and
raining. Both of them were tripped and thrown to the
ground. Plaintiff was assisted by her daughter to rise;
they continued across the street, bought goods and re-

turned to the house, reaching there about twenty minutes after she started out. The loose end of the wire had been down for two or three weeks; most of that time it was tied to a tree, twelve or fifteen inches above the ground. According to the testimony of plaintiff, her husband, and other witnesses, including her physicians, she was pregnant from two to three months, and the fall upon the rock pavement caused her to have spasms, a miscarriage, "inflammation of the peritonitic membrane," enlargement of ovaries, abscesses, displacement of womb, etc., together with much pain and suffering; and that she was in all probability permanently injured. Also, that she was well and strong before the fall, worked and earned money, $12 a month for cooking, besides doing washing and ironing; but has since been able to do practically no work. She suffered in her back, hips, head, etc.; also, her feet and stomach swell constantly. She was 28 years old at the time of the trial; was first married at the age of 12; married her present husband about six years ago, and was not pregnant by him for three or four years.

The testimony of the defendant tended to show, that it employed six men whose duties were constantly to traverse the city and inspect and repair (when necessary) the company's wires, there being about 3,000 miles of them in Atlanta. The company's manager testified that they called up every subscriber in the city every ten days, to learn whether or not the wire was out of order or the instrument broken, and if they got no response they sent a man to find out what was the matter. The men thus employed are experts, and readily notice any trouble on a line in the street. The wires sometimes are broken by heavy rains, storms, cold weather, etc. None of the company's employees seem to have had any notice that there was a wire down at the place in question, until the morning succeeding the night when plain-

tiff claims to have been hurt. One of them testified that he went to the store of one of plaintiff's witnesses on the day of the alleged injury, and fixed the telephone there, and that he looked at the wires just below that place and saw none down. This store was next to plaintiff's residence. Other employees of the company were in the same vicinity two days before, and the wires were in good order so far as they saw, though the wire might have been down without their seeing it. The testimony for the company further tended to show, that the plaintiff was not injured nearly so seriously as she claimed. She was examined by Dr. Jones shortly after the injury, and again about two weeks before the trial. On the morning after the fall she was sitting up, and during the day she drank intoxicating liquor with a man not her husband, and fell down drunk (which testimony she denied in rebuttal). She had complained of womb trouble previously to the time of the injury.

The newly discovered testimony tends to show, that the plaintiff (who had been a resident of Atlanta but a brief time before the injury) previously resided in Greenville, S. C., where she was commonly known as a lewd and disorderly woman; that in April, 1893, she stated that she was not hurt by wire, but she was going to sue the company and get money to go to Chicago, and that she had womb trouble before. Also, that she had lived in the house with Thomas Lynch before they were married; and that Thomas Lynch married another woman previously in Greenville, and was not known to have been divorced from her. Also, that plaintiff had sexual intercourse with a man other than her alleged husband, on February 22, 1894; that she did not testify truly as to her earnings as a cook; that she is about thirty-seven years old; that within two or three weeks after she claimed to have been hurt by the wire, she had men coming to see her just as they always had; that she drank

a great deal, and sometimes became so drunk that she had fits or spasms, etc., etc. No affidavits supporting the character or credibility of the newly discovered witnesses appear in the record. The affidavit of counsel for the defendant states merely, "that none of the evidence contained in the affidavits were communicated to him by the witnesses until after the trial."

SMITH & PENDLETON, for plaintiff in error.

CHARLES Z. BLALOCK, contra.