GEORGIA PACIFIC RY. CO. v. WM. ROBINSON.

1. RAILROADS.   *Passenger and carrier.   Unlawful signal to stop.   Damages.*
   One who by signals causes a passenger train to stop at night at a point not
   a stopping place, and, while endeavoring to enter, though with reason-
   able caution, is injured by the sudden starting of the train, cannot recover
   for the injury, if his purpose to take passage was unknown to the con-
   ductor and other trainmen.   Under such circumstances, when injured, he
   had not acquired the rights of a passenger.

2. SAME.   *Subsequent payment of fare.   Evidence.*
   The fact that he succeeded in entering the car, and that the conductor,
   finding him there, collected fare from him as from other passengers, could
   not give color to the past occurrences which had resulted in his injury.

FROM the circuit court of Carroll county.

HON. C. H. CAMPBELL, Judge.

On December 29th, 1889, appellee, a negro laborer, in company
with several others ,went to Malmaison, a flag-station on defendant's
railroad, where there were no passenger accommodations, but where
trains usually stopped.   Appellee purposed to take passage on the
passenger train which was due at Malmaison at 6 o'clock P. M.
The evening was dark and rainy, and as the train was often behind
time, appellee, instead of waiting at the station, walked down the
track about half a mile, to the house of a friend, who lived near a
section house, and there waited the coming of the train.   When he
heard it coming, he borrowed from the section master a lantern, and
with it signalled the train and brought it to a stop in front of the
section house.   The engine stopped nearly opposite him, and he
hurriedly passed back by the mail and baggage car, to the coach
used by colored passengers, and had seized the iron railing of the
platform, and was in the act of stepping up, when the train suddenly
started, throwing him against the steps and severely injuring his
knee.   As a result of the injury, which proved to be permanent,
appellee was rendered unable to work, and became an inmate of the
poor-house.

When the train stopped in obedience to the signal of appellee, he
did not inform the conductor of his desire to embark as a passenger

and was not seen by the conductor. The train stopped about three minutes, and from where appellant was standing it would be necessary for him to run in order to reach and get in the coach before the train started. In due course of time the conductor passed through the coach, and appellee paid his fare to Greenwood, his destination, but said nothing about his injury, and it does not appear that the conductor knew at the time he collected the fare, that appellant had not gotten on at Malmaison. Robinson testified that he had twice before signalled the train and taken passage at the section house, but it was not shown that it was the custom for trains to take on and let off passengers at that point. The testimony for the defendant is that it was not a stopping place.

By the instructions given to plaintiff the jury was left to decide whether the train stopped for the purpose of receiving him as a passenger, and whether after due care and diligence on his part in boarding the train, appellee was injured by the negligence of defendant's servants. Since the opinion of the court is made to turn upon its veiw of the evidence, it is not thought necessary to notice specifically the several errors assigned by the appellant, or to set out the arguments of counsel in reference to them.

*A. F. Fox*, for appellant.

1. According to plaintiff's own testimony the relation of passenger and carrier did not exist at the time of the injury. He stopped the train at a point not a stopping place: disclosed to no one his intention to take passage, and did nothing from which a contract for passage could be inferred. The conductor did not see him. Railroad companies are not responsible to persons who have not been *accepted as passengers*. Patterson Ry. Ac. Law, § 214; Hutch. on Carriers, § 562. While not necessary that the fare be paid the person must be under the control of the carrier by its consent. Woods' Law of Railways, §§ 1038–1045; Shearman & Redfield on Neg. § 488. Nothing but the stopping of the train is relied on to show that the company had accepted appellant as a passenger at the time of the injury, and this shows nothing. There is not an engineer in the world who would not stop if a lantern is

waved on the track at night. Mere stopping signifies nothing unless it is at a regular stopping place and it is the practice to stop. 2 Shearman & Redfield on Neg. § 490. Even one who boards a train after it starts is not a passenger until he enters the coach. 139 Mass. 238 ; or until he pays his fare. 51 Conn. 143; 132 Pa. 1; 44 Am. & Eng. R. R. Cas. 362; 37 Ib. 58.

2. The plaintiff was guilty of contributory negligence in passing by the regular flag-station and in boarding the car as he did, and because the train stopped long enough for him to enter and he failed to do so. If any of these acts of negligence contributed to the injury he cannot recover. Proximity in point of time and space is no part of the definition of contributory negligence. Beach, Con. Neg. § 18 ; Shearman & Redfield on Neg. § 96.

3. Plaintiff was a trespasser and a wrongdoer in flagging the train at a place not a station. Under snch circumstances he cannot claim the right of a passenger.

*W. R. Harper* and *L. M. Southworth,* for appellee.

1. The question of negligence of defendant and contributory negligence of plaintiff was settled favorbly to plaintiff by the verdict. All disputed points of evidence must now be resolved in favor of the verdict.

2. The relation of passenger and carrier was established. Robinson flagged the train ; the engine stopped opposite him ; he went back to the coach and finally got on; the conductor came and took up his fare. The engineer stopped either to take him as a passenger or because he thought the signal meant danger. If the former the contractual relation was at once established. Every element necessary to a contract is thus presented : the offer to become a passenger and the acceptance of the offer. The question of fact was fairly submitted to the jury. The performance of the contract alone remained. The plaintiff performed his part; the defendant negligently failed in its undertaking to carry him safely.

3. The evidence discloses that the conductor and engineer showed an utter unconcern as to the cause of the stop. The prompt appearance of the conductor to collect the fare is likewise a circumstance to show acceptance of the plaintiff as a passenger.

4. Not only was plaintiff a passenger according to the ordinary rules governing contracts; but under facts like those here, the authorities have held that a person became entitled to the rights of a passenger.    137 Mass. 210; 32 Minn. 1.

Argued orally by *A. F. Fox*, for appellant, and *W. R. Harper*, for appellee.

COOPER, J., delivered the opinion of the court.

The evidence of the plaintiff fails to establish that the " section house" was either a depot or a place at which the appellant was accustomed to receive or discharge passengers, or at which any invitation had been given to the plaintiff or any one else to take passage on its trains.

The plaintiff's case must therefore stand upon the facts disclosed of an unlawful flagging of the train by him on a dark and rainy night at a point on the road at which the servants of the company had no reason to expect a passenger, the stopping of the train because of the signals given by the plaintiff, his attempt to board it while so stopped, the movement of the train at the instant he attempted to enter it, and the consequent injury, together with the fact that after he had entered the train the conductor in charge collected the fare due for a passenger from Malmaison to Greenwood.

Upon the plaintiff's own testimony, and drawing therefrom the inferences most favorable to him, no right of recovery is shown to exist.    It does not appear that any servant of the company was informed that the plaintiff desired to take passage on the train, or that he was attempting or intended to attempt to get on it.    After the injury had been sustained the plaintiff went into the car (the train having just passed a station), and when the conductor came through paid him the fare to his point of destination.    But he himself states that he then for the first time saw the conductor, and there is nothing to show that the conductor had before seen him.    The fact that fare was then collected throws no light upon the past occurrence from which the injury resulted.    The conductor

found plaintiff upon the car, and treating him then as a passenger, as he rightly might do, demanded and received the fare due from him as such.    But this does not show that the conductor had invited him to enter the train at the point he did enter it as a passenger, or in fact knew that he had embarked there.    We are not called upon under the facts of this case to determine whether it is within the scope of the authority of a conductor in charge of a train to bind the company by an attempt to enter into a contract of carriage with a person presenting himself at a place other than those provided for passengers, or outside of the usual course of business. It is sufficient for the decision of the present appeal to say, that under such circumstances it is at least necessary that the servants of the company be informed that a person presenting himself under the circumstances disclosed here, contemplates and offers to become a passenger, before they can be required to deal with him as such.    No such fact appears in the present case, and the court should have given the peremptory instruction asked by the defendant.

*The judgment is reversed.*