ROBINSON, Respondent, *v.* HELENA LIGHT AND RY. CO., Appellant.

(Nos. 2,594 and 2,660.)

(Submitted December 19, 1908. Decided February 6, 1909.)

[99 Pac. 837.]

*Personal Injuries—Carriers—Street Railways—Bills of Exceptions — Misnomer—Amendments—Variance—Instructions— Exceptions—Review—Annuity Tables—Evidence.*

Bill of Exceptions—Certificate—Misnomer—Effect.

1. A bill of exceptions in support of a motion for a new trial was prepared in conformity with the requirements of the Act of 1907 (Laws 1907, p. 89), was entitled and served as such, and opposing counsel in acknowledging service designated it as a bill of exceptions, and after service, offered and had incorporated in it certain amendments. It was submitted to the judge as a bill of exceptions, and the certificate referred to the document as being "allowed, settled and signed as and for a true and correct copy of the proceedings of the trial," etc. In the certificate of settlement, however, counsel for movant designated the document as a "statement on motion for new trial." *Held* that, under the circumstances, the mere misnomer of the document was not sufficient ground for striking the bill from the record on appeal.

Same—Amendments After Appeal—Power of District Court.

2. While the district court has power to amend its records so as to speak the truth, its authority in this regard does not extend to the amendment of an order after it has lost jurisdiction by the taking of an appeal from it; hence an order amending a certificate to a bill of exceptions, erroneously therein designated a statement on motion for new trial, so as to give it its proper title, which order was made pending appeal, was error.

Personal Injuries—Street Railways—Immaterial Variance.

3. Where in a personal injury action against a street railway company the complaint alleged that plaintiff in attempting to board a street-car was injured by the car suddenly moving *forward*, and the evidence revealed the fact that he was thrown from the car by a *backward* movement, and it did not appear that defendant was misled or its counsel surprised by this technical departure in the proof, the court properly overruled a motion for a new trial on the alleged ground of variance. (Revised Codes, sec. 6585.)

Variance—Question not Raised on Motion for New Trial—Effect.

4. A claim of variance between the pleadings and proof, which was not called to the trial court's attention on a motion for new trial, may not be urged for the first time on appeal as error in denying the motion.

Personal Injuries—Simple Negligence—Complaint—Waiver of Defect.

5. Where the complaint in an action for personal injuries, after stating a cause of action for simple negligence, contained a paragraph characterizing the conduct of defendant as "willful" and reckless (which clause might have been omitted without affecting the cause of action theretofore stated), thus by the use of the word "willful"

injecting an element of ambiguity and indefiniteness into the pleading, defendant, by answering, waived this defect; and, plaintiff not having introduced any evidence tending to furnish ground for an inference of wanton or willful wrong, a motion for nonsuit on the ground that the evidence, showing ordinary negligence only, did not support an allegation of intentional injury, was properly denied.

Same—Complaint—Willful Negligence—Proof of Simple Negligence.

6.   *Obiter:* An allegation in a complaint in an action to recover damages for personal injuries that the wrong was willful or wanton will not support recovery upon proof of simple negligence only.

Same—Street Railways—Carrier and Passenger—Evidence—Insufficiency.

7.   Defendant street railway company operated an electric line from a city to a point outside the city limits, where it had erected a platform for the convenience of passengers from and at which to board and leave the cars. Plaintiff, with knowledge that the car he was about to board was not in its proper place at the platform, undertook to do so from a direction where he could not be seen and without notice to the motorman or conductor. In doing so he was thrown from the car by a sudden movement to its place at the platform, and injured. *Held,* that, under these circumstances, the relationship of carrier and passenger was not established, and that defendant owed plaintiff no duty until its employees had notice of his presence.

Same—Street Railways—Platforms—Failure of Passenger to Use—Effect.

8.   Where one about to board a street-car outside of the city limits fails to make use of a platform provided by the carrier for the means of ingress and egress of passengers to and from its cars, and he is injured, he cannot recover, since the high degree of watchfulness which the carrier must exercise toward passengers is not due to those who do not avail themselves of the means provided for accepting the invitation extended by the carrier to take passage, but adopt means of their own choice.

Instructions—Review—Exceptions Necessary.

9.   Error assigned to the giving of an instruction may not be reviewed on appeal where the record shows that counsel merely "objected" to its being given, but did not reserve an exception to the action of the court in overruling the objection, as required by section 6746, Revised Codes.

Same—Review—Bill of Exceptions.

10.   Since the adoption of section 6746, Revised Codes (Laws 1907, p. 62), the whole charge, or such parts of it as will illustrate the point upon which the objecting party relies as error in the charge as well as instructions requested and refused, should be incorporated in a bill of exceptions to insure review on appeal.

Personal Injuries—Mortality and Annuity Tables—Conclusiveness—Evidence—Erroneous Instruction.

11.   An instruction charging the jury, unqualifiedly, in a personal injury action, that they could award to plaintiff such an amount as would purchase an annuity equal to the difference between what he could have earned if he had not been injured, and what he could earn in his injured condition, was erroneous. While standard mortality and annuity tables are competent evidence in such cases, they are not conclusive guides to the jury in awarding damages. In having recourse to them a variety of circumstances should be considered, such as advancing age and consequent diminished earning capacity, plaintiff's health, habits, etc.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Alvin Robinson, a minor, by W. H. Hirst, his guardian *ad litem,* against the Helena Light and Railway Company. Judgment for plaintiff, and defendant appeals from it and an order denying it a new trial. Reversed and remanded.

*Messrs. Carpenter, Day & Carpenter,* for Appellant.

In an action for damages resulting from personal injuries the plaintiff cannot recover on any other theory than that alleged in his complaint; and if a general allegation of negligence is followed by an enumeration and averment of specific acts, the plaintiff will be confined to proof of the negligence specifically assigned. (*Chicago Union Tract Co.* v. *Leonard,* 126 Ill. App. 189; *Denver Con. E. Co.* v. *Walters,* 39 Colo. 301, 89 Pac. 815; *McCoy* v. *Carolina Cent. R. Co.,* 142 N. C. 383, 55 S. E. 270; *McGrath* v. *St. Louis Transit Co.,* 197 Mo. 97, 94 S. W. 872.) While he need not prove every specific act of negligence alleged, he must at least prove actionable negligence in some respect as alleged in his complaint, and not merely make a case of negligence which is not within the theory of his complaint. (*Terre Haute etc. R. Co.* v. *McCorkle,* 140 Ind. 613, 40 N. E. 62; *Wormsdorf* v. *Detroit City Ry. Co.,* 75 Mich. 472, 13 Am. St. Rep. 453, 42 N. W. 1000.) Where the complaint alleges a violation of a certain duty, and the proof shows, if anything, the violation of another duty, the variance is material though the resulting injuries are identical. (*Augusta Ry. & Elec. Co.* v. *Weekly,* 124 Ga. 384, 52 S. E. 444; *Plunkett* v. *Central of Georgia Ry. Co.,* 105 Ga. 203, 30 S. E. 728; *Louisville & N. A. & C. R. Co.* v. *Renicker,* 8 Ind. App. 404, 35 N. E. 1047; *Birmingham Elec. R. Co.* v. *Clay,* 108 Ala. 233, 19 South. 309; *Santa Fe P. & R. Co.* v. *Hurley,* 4 Ariz. 258, 36 Pac. 216; *North Birmingham S. R. Co.* v. *Calderwood,* 89 Ala. 247, 18 Am. St. Rep. 105, 7 South. 360; *Pierce* v. *Great Falls & Canada Ry. Co.,* 22 Mont. 445, 56 Pac. 867; *Denver & R. G. R. Co.* v. *Cahill,* 8 Colo.

App. 158, 45 Pac. 285.)   Where the gravamen of the charge
is of a willful or malicious injury, it cannot be sustained by
proof of mere negligence, however great.   (*Chicago, B. & Q. R.
Co.* v. *Dickson,* 88 Ill. 431; *Indiana B. & W. R. Co.* v. *Burdge,*
94 Ind. 46; *Montgomery* v. *Muskegon Boom Co.,* 88 Mich. 633,
26 Am. St. Rep. 308, 50 N. W. 729; 2 Abbott's Trial Brief,
"Pleadings," 1680.)

The allegation of negligence proper  and willful misconduct
are inconsistent, and proof of mere negligence is not sufficient
to support a complaint alleging the act to be willful.   (*Rideout*
v. *Winnebago Trac. Co.,* 123 Wis. 297, 101 N. W. 672, 3 Street
Ry. Rep. 943, 69 L. R. A. 601, and note.)   There can be no such
thing as "willful negligence" or "reckless negligence" with-
out actual knowledge of plaintiff's peril.   (*Anderson* v. *Minne-
apolis etc. R. Co.,* 103 Minn. 224, 114 N. W. 1123, 14 L. R. A.,
n. s., 886; *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 34 N. E.
504, 23 L. R. A. 552; *Cleveland* v. *Miller,* 149 Ind. 490, 49 N. E.
445.)

The relationship of passenger and carrier is one of contract.
Like other relationships based on contract, it may be inferred
from the circumstances surrounding the case.   But these circum-
stances must fully justify the inference that the person has
boarded the car or presented himself as a passenger and been
accepted as such by the carrier.   (Clark's Accident Law, 2d
ed., chapters 1, 2; *Lewis* v. *Houston Electric Co.,* 39 Tex. Civ.
App. 625, 88 S. W. 489, 112 S. W. 593; 4 Street Ry. Rep. 1032,
and note; *Nathan* v. *New York City Ry. Co.,* 91 N. Y. Supp. 35;
*Gomez* v. *New York City Ry. Co.,* 105 N. Y. Supp. 108; *McCarty*
v. *St. Louis & S. R. Co.,* 105 Mo. App. 596, 80 S. W. 7.)   There
is no negligence on the part of the company in a slight move-
ment of the car while the plaintiff is in the act of boarding,
and no presumption of negligence from the mere happening
of the accident.   Negligence cannot be proved by mere con-
jecture as to how it happened.   (*Weber* v. *New Orleans & C.
R. Co.,* 104 La. 367, 28 South. 892; *Schmeltzer* v. *St. Paul City
Ry. Co.,* 80 Minn. 50, 82 N. W. 1092; *Stager* v. *Ridge Ave. P.*

*Ry. Co.,* 119 Pa. 70, 12 Atl. 821; *Morris* v. *Lake Shore etc. Ry. Co.,* 148 N. Y. 182, 42 N. E. 579.)

*Mr. Wm. Wallace, Jr., Mr. J. G. Brown,* and *Mr. R. F. Gaines,* for Appellant.

Plaintiff in attempting to board the car was on the wrong side and the wrong end of it, and in attempting to do so, he gained no rights as a passenger; but assumed the risk of such action, and was guilty of contributory negligence in so doing. Had he, under like conditions, attempted to board the train of a steam railroad, he unquestionably would have been not a passenger, but simply a trespasser, toward whom no duty would have been owing save not to willfully or wantonly injure him. (*Cleveland etc. Ry. Co.* v. *Wade,* 18 Ind. App. 346, 48 N. E. 12, 16-18; *Wardlaw* v. *California Ry.* (Cal.), 42 Pac. 1075, 1076; *Louisville etc. Ry.* v. *Ricketts,* 96 Ky. 44, 27 S. W. 860; *McGeehan* v. *Lehigh Valley Ry.,* 149 Pa. 188, 24 Atl. 205; Fetter on Carriers, sec. 228, pp. 596, 597; citing *Jones* v. *Boston etc. Ry.,* 163 Mass. 245, 39 N. E. 1019; *Henry* v. *St. Louis etc. Ry.,* 76 Mo. 228, 43 Am. Rep. 762; *Haase* v. *Navigation Co.,* 19 Or. 354, 24 Pac. 238; *Denver etc. Ry.* v. *Pickard,* 8 Colo. 163, 6 Pac. 149; *Georgia Pac. Ry.* v. *Robinson,* 68 Miss. 643, 10 South. 60; *Chicago etc. Ry.* v. *Meyers,* 80 Fed. 346, 25 C. C. A. 486; Booth on Street Railway Law, sec. 329; see, also, *Malpass* v. *Hestonville etc. Ry. Co.,* 189 Pa. 599, 42 Atl. 291; *State* v. *Lake Boland Elevated R. R. Co.,* 84 Md. 163, 34 Atl. 1130, 1131; *Gaffney* v. *St. Paul City Ry.,* 81 Minn. 459, 84 N. W. 304, 305.)

The court gave the jury an erroneous rule of compensation for impaired earning capacity, in directing them that they might award therefor such a sum as would purchase an annuity in amount equal to his loss of earnings annually for the balance of his expected life. Expectancy tables are merely an aid to a jury in arriving at the probable duration of the life of the one particular person with whom they are alone concerned, and if they feel that, by reason of specific conditions affecting him, he would not conform to the average shown by the tables, they cannot rightly

fit the tables arbitrarily upon him; nor can they be rightly told they may do so.   (See *Vicksburg etc. Ry.* v. *Putnam*, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257; *Rooney* v. *New York etc. Ry. Co.*, 173 Mass. 222, 53 N. E. 435; *Morrison* v. *McAtee*, 23 Or. 530, 32 Pac. 400; *Nelson* v. *Lake Shore etc. Ry.*, 104 Mich. 582, 62 N. W. 993; *Goodhart* v. *Pennsylvania Ry.*, 177 Pa. 1, 55 Am. St. Rep. 705, 35 Atl. 191; *Trott* v. *Chicago etc. Ry.*, 115 Iowa, 80, 86 N. W. 35, 87 N. W. 722; *Seifred* v. *Pennsylvania Ry.*, 206 Pa. 399, 55 Atl. 1061; *Campbell* v. *City of York*, 172 Pa. 205, 33 Atl. 879; *Kerrigan* v. *Pennsylvania Ry.*, 194 Pa. 98, 44 Atl. 1071; *Florida etc. Ry. Co.* v. *Burney*, 98 Ga. 1, 26 S. E. 730; *Galveston etc. Ry. Co.* v. *Johnson*, 24 Tex. Civ. App. 180, 58 S. W. 624; *City of Joliet* v. *Blower*, 155 Ill. 414, 40 N. E. 619; *Mary Lee Coal etc. Ry. Co.* v. *Chambliss*, 97 Ala. 171, 11 South. 898; *Birmingham etc. Ry. Co.* v. *Wilmer*, 97 Ala. 165, 11 South. 888; *Crouse* v. *Chicago etc. Ry.*, 102 Wis. 196, 78 N. W. 450; *Roose* v. *Perkins*, 9 Neb. 304, 31 Am. Rep. 409, 2 N. W. 715; *Illinois Central Ry.* v. *Houchins*, 121 Ky. 526, 123 Am. St. Rep. 205, 89 S. W. 530, 1 L. R. A., n. s., 375; *Smiser* v. *State ex rel. King*, 17 Ind. App. 519, 47 N. E. 229; *Hunn* v. *Michigan etc. Ry.*, 78 Mich. 513, 44 N. W. 502, 78 L. R. A. 500; *Friend, City of,* v. *Ingersoll*, 39 Neb. 717, 58 N. W. 281; *McKeigue* v. *City of Janesville*, 68 Wis. 50, 31 N. W. 298; *Harrison* v. *Sutter St. Ry.*, 116 Cal. 156, 47 Pac. 1019; 20 Am. & Eng. Ency. of Law, 2d ed., p. 887; 8 Ency. of Ev. 643.

*Messrs. Clayberg & Horsky,* for Respondent.

The complaint alleged in substance that the car by which the plaintiff was injured stopped at its usual place for discharging and receiving passengers; and that plaintiff was in the act of mounting the same, and that while endeavoring to so mount, the car was suddenly "started up," throwing him under the wheels and injuring him.   We submit that the words "started up," used in their ordinary meaning, include "starting backward" as well as "starting forward."   Starting a car simply means putting it in motion, and the phrase "started up" is sufficiently

comprehensive to include in its meaning the putting of the car in motion either ahead or backward. Hence there was no variance in this regard. The gist of the cause of action was the failure of defendant to keep the car stationary until plaintiff could mount it; whether it went backward or forward is no part of the negligence alleged. Appellant would be liable for negligently starting the car too soon, in either direction. (*Cincinnati etc. Ry. Co.* v. *Ravalee,* 17 Ind. App. 657, 46 N. E. 352; *Lake Shore etc. Ry. Co.* v. *Hundt,* 140 Ill. 525, 30 N. E. 458; *Southern Bell Tel. Co.* v. *Lynch,* 95 Ga. 529, 20 S. E. 500; *Texas & Pac. Ry. Co.* v. *Williams,* 62 Fed. 440, 10 C. C. A. 463; *Steinke* v. *Bentley,* 6 Ind. App. 663, 34 N. E. 97; *Nord* v. *Boston & Mont. Con. C. & S. Min. Co.,* 30 Mont. 48, 75 Pac. 681.) The variance, if any, was immaterial. (Revised Codes, sec. 6585.) Counsel waived the variance, if material: (a) By not claiming at the trial that they were misled to their prejudice (*Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735); (b) By notice of plaintiff's position as disclosed by the testimony of the witness Hilliard, taken before defendant's answer was filed; and (c) By not demurring to the complaint on the ground of ambiguity, or making a motion for a more specific statement.

Inasmuch as counsel for both parties tried the case in the court below upon the theory of ordinary negligence and compensatory damages, it is now too late for counsel for appellant to insist that the judgment should be reversed because plaintiff failed to make any proof of willful and wanton character of the negligence alleged. Investigation of the authorities cited by counsel for appellant will disclose that the decisions are variant upon the question as to whether plaintiff may recover for ordinary negligence, under a complaint in which willful or wanton negligence is alone alleged; most of them holding that, if negligence is alleged, it is for the jury to determine the degree of negligence—that is, whether ordinary, gross or willful—and therefore, where willful negligence is alleged in the complaint, the jury may find that the negligence was ordinary. (*Pendley* v. *Illinois Central Ry. Co.,* 28 Ky. Law Rep. 1324, 92 S. W. 1; *Cincinnati etc. Ry. Co.* v. *Cooke's Admr.,* 113 Ky. 161, 67 S. W.

383; *Richmond & Co.* v. *Farmer,* 97 Ala. 141, 12 South. 86; *Louisville etc. Ry. Co.* v. *Black,* 89 Ala. 313, 8 South. 246; *Montgomery etc. Ry. Co.* v. *Stewart,* 91 Ala. 421, 8 South. 708; *Hays* v. *Gainsville St. Ry.,* 70 Tex. 602, 8 Am. St. Rep. 624, 8 S. W. 491; *Keating* v. *Detroit Ry. Co.,* 104 Mich. 418, 62 N. W. 575; *Richter* v. *Harper,* 95 Mich. 221, 54 N. W. 768.)

Counsel for appellant insist that we allege willful negligence because the word ''reckless'' is used in connection with the statement of the negligence of the defendant. The word ''recklessness'' thus used cannot be given the meaning of ''willfulness.'' (*Highland Ave. Ry.* v. *Sampson,* 112 Ala. 425, 20 South. 566; *Kansas City etc. Co.* v. *Crocker,* 95 Ala. 412, 11 South. 262; *Cleveland etc. Ry.* v. *Tartt,* 64 Fed. 823, 12 C. C. A. 618; *Eddy* v. *Powell,* 49 Fed. 814, 1 C. C. A. 448; *Greathouse* v. *Croan,* 4 Ind. Ter. 668, 76 S. W. 273; *Dull* v. *Cleveland etc. Ry.,* 21 Ind. App. 571, 52 N. E. 1013.)

As to the relation of passenger and carrier, where a person attempts to mount a street-car under the circumstances as disclosed in this record, he is a passenger and entitled to protection as such. (*Cohen* v. *West Chicago Street Ry. Co.,* 60 Fed. 698, 9 C. C. A. 223; *Dudley* v. *Front Street Cable Co.,* 73 Fed. 128; *Barth* v. *Kansas City Ry.,* 142 Mo. 535, 44 S. W. 778; *Kellegher* v. *Forty-second St. Ry.,* 171 N. Y. 309, 63 N. E. 1096; *North Chicago St. Ry. Co.* v. *Cook,* 145 Ill. 551, 33 N. E. 958, *Walters* v. *Phila. Traction Co.,* 161 Pa. 36, 28 Atl. 941; *Redington* v. *Harrisburg Traction Co.,* 210 Pa. 648, 60 Atl. 305; *Normile* v. *Wheeling Traction Co.,* 57 W. Va. 132, 49 S. E. 1030, 68 L. R. A. 901.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff, a minor, through a guardian *ad litem,* for damages for a personal injury alleged to have been suffered by him through the negligence of the defendant. Plaintiff had verdict and judgment. Defendant has appealed from the judgment and an order denying it a new trial.

The defendant owns and operates an electric railway constructed over and along certain streets in the city of Helena, and extending from the city to Ft. Harrison, situated several miles to the northwest, and is a common carrier of passengers. Between the city and Ft. Harrison there is a single line of track. At the latter place the track is laid in the form of a circular loop, returning into itself by means of a switch. To make the return trip to the city the cars are run around the loop and reach the main line again at the switch. A short distance beyond the switch, on the outside of the loop and at a point at which passengers bound to and from Ft. Harrison can most conveniently reach or leave the cars, the defendant has a small platform, six by eight feet, for their accommodation, the roadbed at this point being considerably higher than the general level of the surrounding country. From the level of the roadbed up to the step of the car in use at the time the accident is alleged to have occurred was twenty-one inches. On the evening of April 15, 1906, the plaintiff, an enlisted soldier stationed at Ft. Harrison, wishing to board a car which was on its way around the loop and about to return to the city, attempted to do so as it was brought to a stop near the platform. The motorman in charge had allowed it to run too far, so that the front door was a few feet beyond the platform, and, in order to accommodate persons desiring to leave or enter, it was necessary to move it forward or backward, so that the front or rear door would be opposite the platform, because, the car being about thirty feet in length, the passengers could not otherwise use the platform. He undertook to back it up to the platform so that passengers could reach it from the front door. Just at that time, according to plaintiff's own statement, he had approached the car from the inside of the loop intending to enter it by the rear door. He had grasped the handle and put one foot upon the step. While in the act of drawing up his other foot, the car suddenly moved, causing him to lose his hold and footing, and to fall under the wheels, which crushed his leg near the ankle, with the result that he was permanently injured.

The complaint charges: "(6) That in the operation, management, guidance, and control of said street-car at the time and place hereinafter mentioned, the said defendants acted in a careless and negligent manner, in this, to-wit: That on the fifteenth day of April, 1906, on the said loop portion, and at the terminus of said corporation's said track at Ft. Harrison, one of its cars had, on making the trip from the city to the said fort, come to a full stop to permit passengers to alight and board said car, which said car had come from said city, and was about to commence its return trip from said fort to said city; that said Robinson, desiring and intending to board said car, so at a full stop, as aforesaid, and become a passenger for hire thereon, proceeded to board said car, so at a full stop, as aforesaid, and put one foot upon the footboard at the side of the rear platform of said car, at the same time grasping the handle of the car with one of his hands, and while he thus had one foot on the footboard, as aforesaid, and in the act of drawing up the other, but before he had or was afforded the time or opportunity to, or could, draw up his other foot, and during all of which time, while said Robinson was proceeding to board said car, both the motorman and the conductor were standing on the opposite or front platform of said car, and did not look back at or observe said rear end of the car, the said car, through the negligence, carelessness and recklessness of said defendants, suddenly and without warning to this plaintiff, and without affording him time or opportunity to complete the act of boarding said car, as aforesaid, started up with great force and violent speed, and that by reason of the defendants' said negligence, carelessness and recklessness, said Robinson, without fault or negligence on his part, and while using due care and diligence, was caused to be violently thrown and precipitated with great force to the ground, and underneath one of the rear wheels of said car, and was thereby run over by said car, and both of the rear wheels of said car were derailed, the front wheels remaining on the track; and that, solely by reason of the said defendants' negligence, carelessness, and recklessness, both bones of

said Robinson's right leg at the ankle joint were fractured, splintered, broken, and crushed.  *  *  *  "

"(7) And plaintiff further avers, upon his information and belief, that in so operating, running, and driving and managing said street-car at the time and place aforesaid, and in causing the injuries so sustained by the said Robinson, as aforesaid, the said defendants acted in a willfully and recklessly negligent manner, and without any regard to their duty in the premises, and without any regard to the safety and rights of the said Robinson."

The answer denies all the allegations charging negligence on the defendant's part, and alleges contributory negligence on the part of the plaintiff. At the opening of the trial the defendant objected to the introduction of evidence by plaintiff, on the ground that it appeared from the opening statement of his counsel to the jury that he was seeking to recover upon proof of a cause of action not alleged in the complaint, and of which the defendant had had no notice, in that counsel claimed that the injury occurred while the car was on its outward trip to Ft. Harrison and while it was backing up to the platform, whereas it is alleged in the complaint that the car had reached the platform, and was starting on its return trip. The motion was overruled. At the close of plaintiff's case defendant moved to strike out the testimony of plaintiff and another witness, the ground of the motion being the same as that of the motion to exclude the evidence at the close of counsel's statement. It also moved for a nonsuit, alleging several grounds therefor, all of which are included in the general statement: That there was a variance between the allegations in the complaint and the proof, and that from any point of view the evidence did not make out a *prima facie* case of negligence on the part of the defendant. These motions were denied. It is now contended that a new trial should have been granted because of error in these rulings, and also, in others made during the trial upon questions of evidence and in instructing the jury. It is also contended that the evidence as a whole, apart from the material variance between

the cause of action which is alleged, and that which plaintiff sought to prove, is insufficient to justify the verdict.

The defendant's bill of exceptions in support of the motion for a new trial was prepared, in conformity with the requirements of the statute, as a bill of exceptions. It was entitled and served as such. The acknowledgment of service by plaintiff's counsel designated it as such; and, after service, they offered and had incorporated in it certain amendments. In the preparation of the certificate of settlement—which is in the form of an order—counsel for defendant designated it as a "statement on motion for new trial." Apparently the trial judge attached his signature without paying attention to this designation. Upon the filing of the record in this court counsel for plaintiff submitted a motion to strike from it the whole of the bill, on the ground that it had not been settled in conformity with the requirements of the statute. They also submitted a motion, designating the document as an alleged "statement on motion for new trial," and asked to have it stricken out on the ground that the statute does not authorize a statement as the basis of a motion for a new trial. Pending these motions, counsel for defendant applied to the district court for an order to amend the certificate so as to make it designate the document as a "bill of exceptions," and thus to conform to the fact. The court granted the order, and amended the certificate; and, upon written suggestion to this court, an order was made permitting the record on appeal to be amended accordingly, subject, however, to lawful objection by respondent upon the hearing of the cause on the merits. Disposition of the motions was deferred until that time. From the order made by the district court permitting the amendment, plaintiff appealed. By agreement of counsel this appeal has been submitted for decision, together with the principal appeals.

Inasmuch as we may not consider the questions sought to be presented by the principal appeals unless the bill of exceptions is properly in the record, for they all arise out of proceedings which must have been brought into it by a bill of exceptions,

we shall take up first the questions presented by the motions and the separate appeal. Is the certificate so defective that the document designated as a "bill of exceptions" must be stricken out or disregarded? And, if so, had the district court, pending the appeal from the order, the power to amend it so as to make it conform to the requirements of the statute? Prior to the passage of the Act of February 26, 1907 (Session Laws 1907, p. 89), a motion for a new trial might be made either upon a statement of the case or a bill of exceptions (Code Civ. Proc. 1895, sec. 1172), at the option of the movant. The statement was in form a bill of exceptions, except as to the specifications of matters upon which the movant intended to rely (Code Civ. Proc. 1895, sec. 1173), but it was made up after notice of intention to move for a new trial had been served and filed, and was settled as such. A bill of exceptions was made up during the trial, or within ten days after notice of the entry of judgment, or within such time as the court or judge might allow. (Code Civ. Proc. 1895, secs. 1154, 1155.) A bill of exceptions could also be made up and settled after notice of intention had been served and filed, to be used as the basis of the motion, in the same manner as a statement was used. (Code Civ. Proc. 1895, sec. 1173.) The same course of procedure in the preparation of a bill may be pursued under the Revised Codes (Revised Codes, secs. 6787, 6788, 6796). Since the passage of the Act of February 26, 1907, there has been no provision in the Code authorizing a statement of the case to be used as the basis of the motion. The statement referred to in this Act as a part of the record on appeal (Revised Codes, sec. 6799) is to be made up after a motion for a new trial has been disposed of. Such being the provisions of law applicable, the certificate or order of settlement in this case does not properly designate the document to which it is attached. The objection made to it, however, is exceedingly technical. As stated above, it is entitled a "bill of exceptions." Service of it was made as such. As shown by the recitals contained in it, it was submitted to the judge as a bill of exceptions, and apparently in the considera-

tion of the motion it was regarded as a proper basis for the motion. Besides, the certificate itself refers to the document as being "allowed, settled, and signed as and for a true and cor-rect copy of the proceedings of the trial," etc. In *Harris* v. *Tomlinson*, 130 Ind. 426, 30 N. E. 214, the supreme court of Indiana refused to sustain an objection to a bill of exceptions wherein the words "testimony" and "offered" were used, in-stead of the appropriate terms "evidence" and "introduced." Touching the misuse of the first of these terms, the court said: "We cannot permit the simple misuse of a word, where the meaning is obvious, to defeat the operation of an instrument of such importance as a bill of exceptions." The use of the word "offered" for "introduced" was deemed of no merit, since the record showed the sense in which the former was used. Even though no designation had been used in the certificate, we ap-prehend that no objection would have been made to it in this court. Under the circumstances we do not think the objection should be deemed meritorious. The motions to strike are there-fore overruled.

In this disposition of the motions we have proceeded upon the theory that a motion to strike is the proper course to pursue in order to have the record purged of matters which should not have been incorporated in it. This procedure was recognized in *Mettler* v. *Adamson et al., ante,* p. 198, 99 Pac. 441, with reference to papers which are not part of the record in the lower court. Counsel for appellant insists that the motion should be denied, because it is the rule, well recognized by the decisions of this court, that a document which is a part of the record in the lower court, and which has been properly certified to this court as a part of the record on appeal, such as a bill of exceptions or statement on motion for new trial, however defective it may be for any reason-appearing on the face of it, may not be stricken out, but must remain in the record; the effect to be given to it being a matter for consideration upon the hearing of the cause on the merits. This is the recognized rule. (*Beach* v. *Spokane R. & W. Co.,* 25 Mont. 367, 65 Pac. 106;

*Kranich* v. *Helena Con. Water Co.,* 26 Mont. 379, 68 Pac. 408.) Since disposition had to be made of them, however, we have treated them as if the question really at issue was properly raised by them.

The conclusion we have arrived at would obviate the necessity of discussing the action of the district court in amending the certificate, were it not that the question involved is presented by a separate appeal, which must be disposed of. We are of the opinion that the court erred in this regard. When the bill of exceptions was settled and ordered filed, it, including the certificate, became a part of the record to be used on the motion for new trial. The disposition of the motion was made upon this record. Therefore, so long as the order stood, the record should not have been changed, for the result was the substitution of a new record as the basis of an order already made. The trial court has power to amend its records so as to make them speak the truth. (*Power & Bro., Ltd.,* v. *Turner,* 37 Mont. 521, 97 Pac. 950.) It probably has the power, upon timely application presenting meritorious grounds therefor, to set aside an order disposing of a motion for new trial, and then to amend the bill of exceptions, provided a case is made which permits of such an amendment. Another order may then be made upon the basis thus furnished, and this is the orderly course of procedure. But after appeal from the order the court cannot amend it or set it aside, for it has lost jurisdiction over it for any purpose. The review in the appellate court must be made upon the same record upon which the order was made. The same or analogous questions have frequently been brought to the notice of the courts, and the decisions generally support the conclusions above stated. The principle running through them all is that the determination of the trial court, whether technically a judgment or order, fixes for the time being the status of the parties, and the right to the relief sought by the appeal is predicated upon the condition of the record at the time the determination was reached. The following cases are in point: *Hynes* v. *Barnes,* 30 Mont. 25, 75 Pac. 523; *Baker* v. *Borello,* 131 Cal. 615, 63 Pac. 914; *Merced Bank* v. *Price,* 152 Cal. 697,

93 Pac. 866; *Thomas* v. *Sullivan,* 11 Nev. 280; *Lamburth* v. *Dalton,* 9 Nev. 64; *Dean* v. *Pritchard,* 9 Nev. 232; *Riley* v. *Chicago, M. & St. P. Ry.,* 71 Minn. 425, 74 N. W. 171; *Moore* v. *Reid,* 110 Ga. 248, 34 S. E. 211.   In *Thomas* v. *Sullivan, supra,* the trial judge had attached his certificate to the statement on motion for a new trial after the motion had been disposed of and an appeal taken from the order.   The court disregarded the statement, saying: "This certificate having been made after the district court had lost jurisdiction of the case for that purpose, we are compelled to wholly disregard the statement to which it is affixed; and, as there is nothing to support the order granting a new trial, it must be reversed."   If a certificate may not be supplied where there is none, certainly, and for the same reason, one so defective as to be nugatory may not be amended. The order authorizing the amendment is reversed.   The order of this court permitting the record in this court to be amended upon suggestion of counsel should not have been made.

Passing now to the consideration of the merits, we inquire, first, whether the defendant should have been granted a new trial on the ground of the alleged variance between the proof and the allegations of the complaint.   The contention is that the evidence does not tend to support the specific acts of negligence pleaded (a) as to the time of the accident; (b) as to the manner of its occurrence; and (c) as to the relationship of the parties.   It is also said that the complaint alleges that the injury was caused by the willful and reckless negligence of the defendant, and that there is a further variance, in that the evidence tends to show only simple negligence.   The last two of these specifications have to do rather with the insufficiency of the evidence to justify the verdict, and will be examined hereafter when we come to look into the evidence upon this point.

The complaint alleges that the accident occurred when the car, "on making the trip from the city to the said fort, had come to a full stop to permit passengers to alight and board said car, which said car had come from said city, and was about to commence its return trip; *  *  *  that said Robinson, desiring and intending to board said car, so at a full stop," proceeded

to do so, but that the car, before he had time to board it, started up with great force and violent speed, causing him to be thrown under one of the rear wheels. The testimony of plaintiff is to the effect that the car on its return trip had run beyond the platform; that he had attempted to board it, having approached it from the inside of the loop and at the rear door, and that, while engaged in doing so, having one foot upon the step, and being in the act of raising up the other, the car suddenly moved backward, causing him to lose his hold and throwing him under the rear wheels. He did not notice whether the passengers were getting off the car. He noticed that the motorman was in the forward part of the car, but did not see the conductor at all. He did not call the attention of either one of them to the fact that he was about to board the car. He had been stationed at Ft. Harrison since some time during the previous month. Terrence, a witness for the plaintiff, and the only other who testified as to any of the particulars of the accident, corroborated him in his statement as to the movement of the car, stating, further, that he stepped off the car and walked back to the platform. Upon reaching it he heard plaintiff's outcry, and discovered him lying near the rear of the car, on the opposite side of the road. Hilliard, another witness, testified that it was customary for passengers to alight from the front end of the car at this station; that on this occasion the front end of the car was allowed to pass about four feet beyond the platform; that when it stopped, some one said it would have to be backed up; and that it was backed up six or eight feet, so that the front door was opposite the middle of the platform. From the other evidence it appeared that no one on board the car knew of the presence of the plaintiff until after he had been hurt.

Does this evidence tend to establish a case different in substance from that alleged? It varies from it in putting the accident, in point of time, after the car had stopped and began to move backward in order to discharge its passengers, instead of after this had been done and it was moving forward on the return trip to the city, and in revealing the fact that the plaintiff was thrown from it by a sudden backward movement in-

stead of a forward movement. But, since the defendant had notice of the time and place of the accident, and of plaintiff's claim that he was thrown from the car by its sudden movement, what substantial ground is there for the conclusion that defendant was misled to its prejudice by this technical variance? The station was the end of the run. What difference could it make to defendant, in its effort to meet the charge, whether the car was moved backward or forward? The statute declares: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Revised Codes, sec. 6585.) Also: "Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs." (Revised Codes, sec. 6586.) It does not appear that the defendant was misled so that it did not have present any witness that it would otherwise have had, or that counsel was surprised in the least. They did not make this contention at the trial, but only that the variance was substantial, insisting that the evidence did not tend to establish exactly the cause of action alleged, and hence that there was a failure of proof. The trial court overruled their contention as being without merit, and we think the ruling was correct. (*Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735.)

The gist of the cause of action alleged is that the defendant was guilty of negligence in failing to keep the car stationary until the plaintiff could board it. Whenever a passenger is about to board a car, under circumstances as to time and place such as that it can be said that he has been invited by the carrier to do so, the latter is guilty of negligence if time is not given him. The question for trial was whether the defendant had invited the plaintiff to board the car at the time he attempted to do so, and as he attempted to do it, and whether he was allowed the time necessary for that purpose; but whether the car was moved backward or forward was a mere detail in the occurrence resulting in the injury, and no claim of substan-

tial variance can be predicated upon it. (*Nord* v. *Boston & Mont. Con. C. & S. Min. Co.*, 30 Mont. 48, 75 Pac. 681; see, also, *Lake Shore & M. S. Ry. Co.* v. *Hundt*, 140 Ill. 525, 30 N. E. 458; *Cincinnati, H. & I. R. Co.* v. *Revalee*, 17 Ind. App. 657, 46 N. E. 352; *Southern Bell T. & T. Co.* v. *Lynch*, 95 Ga. 529, 20 S. E. 500; *Steinke* v. *Bentley*, 6 Ind. App. 663, 34 N. E. 97.) Under such circumstances the defendant is not entitled to a new trial. (Revised Codes, sec. 6593; *Poindexter & Orr Live Stock Co.* v. *Oregon Short Line Ry. Co.*, 33 Mont. 338, 83 Pac. 886.) The case of *Pierce* v. *Great Falls & C. Ry. Co.*, 22 Mont. 448, 56 Pac. 867, cited by counsel, is not in point. In that case it was declared by this court to be the rule that, while general allegations of negligence on the part of the carrier are sufficient to sustain the action, yet when the particulars in which the negligence consisted are alleged, plaintiff in making his proof must confine himself to the limitations to which he has thus restricted the issue. This must be so, otherwise the defendant would be held upon proof of a cause of action of which he had no notice. And this is the general rule, as shown by the cases cited by appellant's counsel; but it has no application to the facts of this· case. In all of these cases there was a substantive departure in the evidence from the cause of action declared on, and this was properly regarded as a failure in the proof. These remarks dispose of the motion made by counsel, at the close of plaintiff's case, to strike out his testimony and that of the witness Terrence, on the ground that it did not tend to support the specific cause of action alleged.

The last two particulars in which it is claimed that there was a departure in the proof were not called to the attention of the trial court under this head, and may not be urged in this behalf for the first time in this court. (*Nord* v. *Boston & Montana Con. C. & S. Min. Co.*, 30 Mont. 48, 75 Pac. 681; *Dawes* v. *Great Falls*, 31 Mont. 9, 77 Pac. 309.) In fact they do not present the question whether there was a variance, but are rather particulars wherein, from the point of view of defendant's counsel, the evidence failed to make out the cause of action alleged,

to-wit, that plaintiff was a passenger on one of defendant's cars, and was injured by the willful negligence of defendant's servants; for the argument is that the court erred in refusing to sustain the motion for nonsuit and to direct a verdict for defendant, on the ground that the relation of passenger and carrier was not shown by the evidence, and that evidence furnishing an inference of ordinary negligence only does not support an allegation of intentional injury, as imported by the use of the terms "willful" and "reckless," characterizing the negligence alleged in paragraph 7 of the complaint. Noticing the last point first, it may be observed that the plaintiff introduced no evidence furnishing ground for an inference of wanton or willful wrong by defendant's servants; nor was it necessary, from any point in view for him to do so, under the allegations contained in the sixth paragraph of the complaint. The word "reckless" does not imply willfulness. The term means "heedless, careless, rash, indifferent to consequences." One may be heedless, rash or indifferent without intending the consequences of his action. (*Kansas City etc. R. R.* v. *Crocker*, 95 Ala. 412. 11 South. 262.)   The allegations contained in the seventh paragraph might have been omitted altogether, without affecting the cause of action already stated. At best the use of the word "willful" in the last paragraph serves only to render the pleading indefinite and ambiguous in its statement of the cause of action, and this defect could have been taken advantage of by special demurrer only. Doubtless the trial judge entertained the view that, after issue joined, the pleading, ambiguous in its allegations, should be construed most favorably to plaintiff, and this course was correct, for the rule is that by answering defendant waives defects of this character (Revised Codes, sec. 6539); and, when question is thereafter made as to the purport of the pleading, it will be construed to state a cause of action, if upon any reasonable theory this may be done. Omitting the last paragraph of the complaint, it must be construed to state a cause of action for simple negligence. The question presented by the motions did not arise directly upon the sufficiency of the

pleading, but a solution of it required a construction of the
pleading, and, under a just application of the rule adverted to,
the contention of counsel was properly overruled.

The rule contended for by counsel that where the allegation
is of willful or wanton wrong, proof of simple negligence will
not justify a recovery is, we think, founded upon correct rea-
son, and is supported by the great weight of authority. (29
Cyc. 588; *Chicago B. & Q. Ry. Co.* v. *Dickson,* 88 Ill. 431;
*Wilson's Admx.* v. *Chippewa Valley Ry. Co.,* 120 Wis. 636, 98
N. W. 536, 66 L. R. A. 912; *Kansas etc. R. R. Co.* v. *Crocker,*
95 Ala. 412, 11 South. 262; *Louisville, N. A. & C. Ry. Co.* v.
*Bryan,* 107 Ind. 51, 7 N. E. 807.) But counsel are not in posi-
tion to invoke it in this case.

The contention that the evidence did not establish the rela-
tion of passenger and carrier must, we think, be sustained. The
substance of the testimony of plaintiff and the witness Terrence
has already been stated. As already pointed out, these were the
only witnesses who attempted to state any of the details of the
accident. From the testimony of the conductor and motorman
it appears that the intention was to stop the car with the front
door at the platform, so that the passengers could leave it by
that door. From the testimony of some of the passengers this
was the customary way of placing the car at this station, and
this fact must have been known to plaintiff. The motorman,
upon finding that he had run by the platform, reversed the
current and backed the car to the proper position. Naturally
the conductor was at the front end of the car to discharge his
duty in looking after the passengers leaving and boarding it.
Naturally, also, he could expect passengers leaving and board-
ing it to use the means provided by the company for that pur-
pose. Without notice of the fact that a person was seeking to
get on board from the opposite side and through the rear door,
neither he nor the motorman was bound to turn their attention
in that direction. All the witnesses agree that the car was de-
railed, either as it backed up to the platform, or as it started
on around the loop on the return trip, and that the plaintiff

was not discovered by anyone until after this occurred. It is not important, however, when the derailment took place. The important point is that the plaintiff undertook to board the car at a moment when he knew it was not at its proper place, from a direction from which he could not be seen, and without notice to the motorman or conductor, so that they could look after his safety. Had he, under similar circumstances, undertaken to board a train on a steam railway, he would not have been a passenger, but rather in the position of a trespasser, to whom the company would not have owed any duty until it had notice of his presence.

In *Wardlaw* v. *California Ry. Co.* (Cal.), 42 Pac. 1075, the facts were that the plaintiff approached a train from the wrong side, and attempted to board it by a means other than the steps provided for that purpose. In doing so he put his foot upon the bumper of the car just in time to have it caught between it and the bumper of the next car as the engineer started to back the train, and was thus injured. In speaking of the duty of passengers to use platforms provided for them by a railway company the court said: "It is the duty of a railway company, as a common carrier of passengers, to keep its stations and the approaches thereto in such a condition that those having occasion to use them for the purposes for which they are designed may do so with safety. So, too, the duty devolves upon it of preparing all proper means of ingress and egress to and from its cars devoted to the carriage of passengers. This duty performed by the railroad company, the reciprocal duty devolves upon one who would take passage by the cars to use his natural faculties in selecting such means and place of access thereto as have been provided for that purpose, and as promise immunity from danger. Not to do so is evidence of negligence on the part of the passenger; and where, as in the present case, the plaintiff went upon the side of the car opposite to the platform, and presumably not the place arranged to receive passengers, and, finding no place of access, attempted to climb upon the train, from between the cars, with the barrier of a railing be-

fore him to be scaled when he reached the level of the car floor, and in so doing placed his foot upon the bumper, where it was caught by the connecting car, pressed back by the engine moving up to couple on the train, but one inference can be drawn from the facts, and that is that he was guilty of such negligence as is denominated negligence in law.'' The rule here announced is laid down by the authorities generally. (1 Fetter on Carriers, sec. 228; *Georgia Pac. Ry. Co.* v. *Robinson,* 68 Miss. 643, 10 South. 60; *Louisville & N. R. Co.* v. *Ricketts,* 96 Ky. 44, 27 S. W. 860; *McGeehan* v. *Lehigh Valley St. Ry. Co.,* 149 Pa. 188, 24 Atl. 205; *Cleveland, C., C. & St. L. Ry. Co.* v. *Wade,* 18 Ind. App. 346, 48 N. E. 12; *Denver, S. P. & P. R. Co.* v. *Pickard,* 8 Colo. 163, 6 Pac. 149; *Haase* v. *Oregon Ry. & Nav. Co.,* 19 Or. 354, 24 Pac. 238; *Jones* v. *Boston & Maine R. R.,* 163 Mass. 245, 39 N. E. 1019.) It applies as well to persons leaving trains, as is shown by the cases cited. It is based upon the obviously just principle that the very high degree of watchfulness which the carrier must exercise toward those who have intrusted themselves to its care at its own invitation is not due to those who are not invited to do this, or who, if invited, do not avail themselves of the means provided by which they may accept the invitation, but adopt means of their own choice. It is not permissible for street railway companies to provide platforms, and other like conveniences, along the streets. The graded or paved streets furnish the only platform from which cars may be boarded. The places at which they stop may be designated by the ordinances of the city. If there be no such ordinances or public statutes on the subject, the companies regulate their own conduct in this regard. Whenever and wherever they do stop their cars, and they are so equipped as to indicate that they are ready to receive passengers, and are about to proceed on their way to transport them, this must be regarded as an invitation to anyone desiring to become a passenger to enter. But when the track runs beyond the limits of the city, through uneven, open country, it is generally necessary for the company to designate

stations and to provide platforms so that the cars can be reached without inconvenience and danger. Under these circumstances the principles which apply to steam railways apply to them also, and the duties and liabilities of those operating them are the same, because, excepting the fact that they must perhaps provide for more frequent stops, the circumstances and responsibilities are the same. (Booth on Street Railway Law, sec. 329; *Udell* v. *Citizens' Street Ry. Co.*, 152 Ind. 507, 71 Am. St. Rep. 336, 52 N. E. 799; *State to the Use etc.* v. *Lake Roland Elevated Ry. Co.*, 84 Md. 163, 34 Atl. 1130.)

Under the undisputed facts in this case the car had not stopped at the usual place for taking on and discharging passengers. This fact must have been known to plaintiff, for presumably he was aware of the custom pursued by the company at this station. At any rate, knowing the car had passed the station, he paid no attention to this fact, but, going to the opposite end from that intended for the use of passengers, without giving notice to those in charge of it, he undertook to board it. Whether the inference to be drawn from these circumstances is that he assumed the risk, or was guilty of contributory negligence, the blame rests with him, and he cannot recover.

Among the instructions submitted to the jury was the following: "(14) In determining the amount which you may award to the plaintiff on account of any diminished capacity for the work or labor because of his injuries, if you believe them to be permanent, you may take into consideration his expectancy of life, and you may award him such sum on that account as will purchase an annuity equal to the difference between what he could have earned if he had not been injured and what he can now earn in view of his injuries." Counsel for defendant "objected" to the giving of this, for the reason that it is a comment upon the weight of the evidence, and explicitly told the jury that they should award to the plaintiff such an amount as would purchase an annuity equal to the difference between what he could have earned if he had not

been injured and what he could earn in his injured condition. It is insisted by counsel for plaintiff that the error assigned upon this instruction is not properly before this court for ex- amination, because it does not appear from the record that a formal exception to the giving of the instruction was reserved in the trial court after the objection had been overruled.

Under section 6746, Revised Codes, at the settlement of the instructions as therein provided, counsel must state his objec- tion to the particular instruction, and, if the objection is over- ruled, reserve his exception. The language of the section con- fuses the meaning, to some extent, of the terms "objection" and "exception"; but *orderly procedure requires an exception* after the objection has been disposed of, in order to enable coun- sel to urge the action of the court thereon on motion for a new trial, or on appeal, as in case of all other rulings that are re- garded as objectionable, and to which exception must be taken. Technically, therefore, counsel for defendant have no right to have this court review the action of the trial court in this par- ticular. Since, however, the question presented is of some im- portance, and a new trial must be ordered for the reason already stated, we shall venture to indicate briefly our views.

Before doing so, however, we shall notice another objection made to the consideration of the question presented by the as- signment, viz., that the instructions given and refused are not in the judgment-roll, as required by the section cited *supra*, but are found only in the bill of exceptions, and therefore that none of them are before us for examination. Section 6784 declares what matters are deemed excepted to without formal exception embodied in a bill. Among them are the instructions. Section 6806 declares what the judgment-roll shall contain, the enumeration therein, including the matters deemed excepted to and made part of the record without a formal bill of exceptions. Section 6746 declares that all instructions, both those given and those refused, shall be indorsed by the judge and filed as a part of the record in the case. This section was enacted by the tenth legislative assembly (Session Laws 1907, p. 62), but seem-

ingly without attention to, or notice of, the provisions in sections 6784 and 6806. Prior to the passage of this Act a review of the instructions could be had upon appeal from the judgment, either with or without the aid of a bill of exceptions bringing up the evidence. It will be seen, however, that by the express provisions of section 6746 the instructions may not be reviewed without a bill of exceptions specifically pointing out the particular objection made at the time of the settlement; so that, while they are a part of the record, they really serve no useful purpose on the appeal. Section 7112, however, requires only those parts of the judgment-roll which are necessary to be considered on the appeal to be brought up in the transcript. Hence the bringing up of the instructions can serve no useful purpose if the bill of exceptions taken at the settlement is made up in conformity with the requirements of section 6785, so as to present intelligibly the point upon which the appellant relies.

In view of the provisions of section 6746, requiring a bill of exceptions in order to obtain a review of the instructions, and the requirements of section 6785 referred to, we hold that the proper course to pursue is to incorporate in the bill the whole charge, or such parts of it as will illustrate the point upon which the objecting party relies. The provisions of sections 6784 and 6806 have become obsolete, so far as they include the instructions as a part of the record for review, without a bill of exceptions embodying the objections of the party to the action of the court thereon. This rule applies, also, to instructions requested and refused. The instruction complained of, together with the rest of the charge, both the paragraphs given and those refused, are properly in the bill of exceptions.

Coming, then, to consider the contention of counsel for defendant, we are of the opinion that the instruction is open to the objection that it does not declare the correct rule as to the use to be made by the jury of the mortality and annuity tables in arriving at the amount of their verdict. The instruction follows closely the language employed by this court in *Bourke*

v. *Butte Electric Power Co.,* 33 Mont. 267, 83 Pac. 470, in discussing the propriety of using mortality and annuity tables as a definite standard by which to fix the amount of compensation for the impairment of earning capacity in personal injury cases. What was there said was not necessary to a decision of the case. It was the subject of comment in the later case of *Lewis* v. *Northern Pacific Ry. Co.,* 36 Mont. 207, 92 Pac. 469, and the suggestion was there made that, when earning capacity depends upon physical strength, the jury should also be advised that they should consider the fact that as age advances physical strength and earning capacity diminish, and that their finding should be made accordingly. The suggestion made in the latter case was in the decision of the question whether the verdict was excessive, and did not arise upon the propriety of an instruction. Whether the remarks in either of these cases were pertinent or not, the intention was not to lay down a fixed standard or rule by which the jury should be governed. A variety of circumstances must always enter into the consideration of the jury in adjusting the amount of damages to be allowed for impairment of earning capacity. Mortality and annuity tables are competent evidence, and, generally speaking, the only substantive evidence that can be submitted to aid the jury in arriving at a just conclusion. For this reason the average man would be inclined to resort to it as the easiest means of solving the difficult problem before him, to-wit, how much will compensate the plaintiff for his loss of earning capacity. So, if reference is made in the instructions to this feature of the evidence at all, it should not be made in such terms, as in the instruction before us, as to leave room for the conclusion that these tables must be accepted as a fixed standard of computation by which the jury are to be governed absolutely. In addition to impairment of earning capacity by advancing age many other things are proper for consideration as elements in the problem. The office of these tables and the other matters to be considered together with them are well stated by the supreme court of Oregon, in *Morrison* v. *McAtee,* 23 Or. 530, 32

Pac. 400, as follows: "Standard mortality tables, showing the expectation of life of a given age, are competent for the purpose of showing the probable length of life of any given person, but, in the nature of the case, cannot be conclusive. They are simply the result of calculations, based upon a certain average rate of mortality as shown by experience, and assuming that all of the same age are of equal value. But the constitution, habits, and health of individuals differ essentially, and this must be taken into consideration in estimating the probable length of life of any given person, and therefore no ordinary table of expectation of life, although it may offer much valuable information, can alone be taken as a correct rule for estimating the value of the life of any particular individual."

In commenting upon an instruction on this subject, the supreme court of the United States, in *Vicksburg etc. Ry. Co.* v. *Putnam*, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257, said: "Life and annuity tables are framed upon the basis of the average duration of the lives of a great number of persons. But what the jury had to consider in this case was the probable duration of plaintiff's life and of the injury to his capacity to earn his livelihood. Upon the evidence before them it was a controverted question whether the injury would be temporary or permanent. The instruction excepted to, either taken by itself or in connection with the whole charge, tended to mislead the jury by obliging them to ascertain the average injury to the plaintiff's capacity by the year, whether the extent of that injury would be constant or varying, and by giving them to understand that the tables were not merely competent evidence of the average duration of human life, and of the present value of life annuities, but furnished absolute rules which the law required them to apply in estimating the probable duration of plaintiff's life and the extent of the injury which he had suffered."

An instruction formulated so as to embody the suggestions here made would not be open to any objection, and would aid the jury, so far as the court may aid it, in reaching a just con-

clusion.   For a discussion of the subject generally, reference is made to the following cases: *Rooney* v. *New York etc. Ry. Co.,* 173 Mass. 222, 53 N. E. 435; *Nelson* v. *Lake Shore Ry. Co.,* 104 Mich. 582, 62 N. W. 993; *Trott* v. *Chicago etc. Ry. Co.,* 115 Iowa, 80, 86 N. W. 33, 87 N. W. 722; *Roose* v. *Perkins,* 9 Neb. 304, 31 Am. Rep. 409, 2 N. W. 715; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, 47 Pac. 1019; *Florida etc. Ry. Co.* v. *Burney,* 98 Ga. 1, 26 S. E. 730; *City of Joliet* v. *Blower,* 155 Ill. 414, 40 N. E. 619; *Smiser* v. *State,* 17 Ind. App. 519, 47 N. E. 229.

The other assignments are not of sufficient merit to demand special notice.

The judgment and order are reversed, with directions to the district court to grant the defendant a new trial.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 10, 1909.